[Civ. No. 6012. First Appellate District, Division One.—October 25, 1927.]

FRED PEREZ, Respondent, v. ORMAN CROCKER, Appellant.

Sloss & Ackerman for Appellant.

Vincent W. Hallinan for Respondent.

PARKER, J., *pro tem.*—In this action plaintiff sought to recover damages from defendants for personal injuries sustained by him as the result of defendants' negligence.

The defendants Joseph Wilson and Claire Wilson, though testifying at the trial, made no appearance in the action and plaintiff did not ask for judgment against them.

The case was tried before a jury and a verdict returned against defendant Orman Crocker in the sum of seven thousand dollars. From the judgment entered on this verdict and from the court's order denying his motion for a new trial the defendant Crocker prosecutes this appeal.

It is conceded that the evidence was sufficient to sustain the verdict, and no errors in the admission or rejection of testimony are noted or urged. Nor is the court's action in the giving or refusal to give instructions complained of here. The sole point before this court and the point upon which appellant asks for a reversal of the judgment is misconduct of counsel for plaintiff, as a result of which defendant was precluded from a fair trial of his cause on the merits.

The alleged misconduct arises from the following state of facts:

During the closing argument of plaintiff's counsel to the jury these proceedings were had:

"Mr. Hallinan, Counsel for Plaintiff: Counsel for the defendant criticises my conduct in abandoning the suit as to defendants Claire Wilson and her husband. We would not take the roof from over the heads of the three small children of the Wilsons."

To this statement of counsel no objection was made by defendant appellant nor was the same called to the attention of the court in any manner. Then later in the argument the following took place:

"Mr. Hallinan, Plaintiff's Attorney: Some time ago I saw a cartoon by Tad in 'The Call' representing a number of men and women sitting in an insurance office. The cartoon was called 'The Fifteen Mile an Hour Club,' and all of those persons in that office were represented as saying they were not driving over fifteen miles an hour.

"Mr. Ackerman (Counsel for Defendant Crocker): I assign that statement as error on the part of counsel and ask that the jury be instructed to disregard the statement.

"The Court: Yes, that is not in evidence.

"Mr. Hallinan: I was not bringing in the insurance company. That was not the purpose at all.

"The Court: I will ask the jury to disregard any insinuations along that line. The courts have been very strict about the references you may make in that regard. The rule is a strict one.

"Mr. Ackerman: There is no insurance company in this case, and I ask that the jury be instructed regarding the impropriety of Mr. Hallinan's reference to an insurance company.

"The Court: If any reference has been made I ask the jury to disregard it entirely because, as I say, the rule laid down by our courts is very strict in that matter. You are not to take into consideration at all whether the defendant is or is not represented by an insurance company.

"Mr. Hallinan: I am sorry if I conveyed any such impression. That was not my purpose at all."

■ With reference to the first statement of counsel concerning the failure of plaintiff to urge any claim against the Wilsons it seems that more was said on this subject than is embraced in the foregoing. While the transcript of the proceedings before us shows that in the engrossed bill of exceptions nothing further appears, yet in the affidavits filed on the motion for a new trial in the court below and in the brief of appellant here it is conceded that counsel for plaintiff said that it was his conclusion that the Wilsons were not liable to plaintiff, nor were they in any way to blame for the accident, and that the sole responsibility rested on the defendant Crocker, appellant here. He said further that he would sooner have plaintiff recover nothing than to unjustly take the roof from over the heads of the Wilsons and their three children, either by compelling them to defend an unjust claim against them or by collecting upon a judgment unjustly obtained.

To appreciate this last contention it should be stated that in this action the plaintiff was injured while he was standing on the sidewalk, presumably in a place of safety, and that nowhere was it contended that the negligence of plaintiff in any way contributed to his injuries. The injuries to him were caused through the acts of the defendants Wil-

son and the appellant Crocker, whether negligent or otherwise, and in the situation presented there could have been many theories left to plaintiff's election. He could have claimed that his injuries resulted from the concurring negligence of the defendants or from the negligence of either of them. While he chose to fasten the liability upon appellant he thereby in no way restricted appellant's right to show himself entirely free from negligence and fasten the blame, if any, on the co-defendants Wilson. In fact it was the defense of appellant that the accident and its unfortunate results followed the negligence of the defendants Wilson. Appellant concedes that the statement of counsel regarding his failure to proceed against the Wilsons might not of itself be sufficient to upset the judgment herein. We affirm his conjecture in this regard, at the same time taking now the opportunity of suggesting to counsel in all cases that this class of argument should be avoided, and that we do not approve the general idea of bringing before a jury in cases of this sort anything concerning the wealth or poverty or ability of the parties to respond in compensatory damages.

■ Appellant insists that the statements of counsel as to the "Fifteen Mile an Hour Club" demand a new trial and the reversal of the order of the court below.

We have given his contention fullest consideration and are not prepared to go to the length demanded. Counsel for appellant in their closing brief use these words: "Counsel who conduct the trial for defendant are in an awkward and difficult position. If they object to the statement assigned as misconduct and request the admonition of the court they emphasize the point and involuntarily assist in impressing it upon the minds of the jurors."

It seems to us that this is exactly what was done in the instant case. Appellant has taken up the remarks under scrutiny here and has twisted each sentence into a direct reference to the fact that defendant Crocker was being defended by an insurance company, and that any verdict returned by the jury would come out of the pocket of the company. We fail to see it or how the words employed can be so construed.

We can accept without question all of the authorities of this and other states cited by appellant and yet find noth-

ing in the record to which they may be applied to the extent of requiring a reversal of the judgment and order here. All the reviewing courts of this state are in accord upon the proposition that unfair and unwarranted means of winning a lawsuit cannot be commended nor receive recognition and indorsement of the courts, instituted and maintained, as they are, on the principle of administering justice. We are not out of harmony with the principle announced in *Dameron* v. *Ansbro,* 39 Cal. App. 289, 298 [178 Pac. 874, 879], wherein it is said: "It is altogether probable that the jury would be more inclined to find a verdict against appellant if it were believed that he was indemnified than if it were understood that he was to bear the burden alone."

Without abundant citation of authority we may here reaffirm it to be the law of this jurisdiction that it is improper to either directly or indirectly get before the jury any fact which conveys the information that defendant is insured against loss in case of a recovery against him, and the striking of the answers conveying such information and the instructing of the jury not to consider it will not save the error.

The parties to an action and their liabilities must be determined by the pleadings, and when other parties and other issues are injected the one so injecting does so at the peril of any judgment he may obtain. (*Shay* v. *Horr,* 78 Wash. 667 [139 Pac. 604].)

The profession as a whole should know that the courts of this state are giving more and more scrutiny to the fairness or unfairness of the means employed in presenting issues. The supreme court has spoken in no uncertain terms in *Keena* v. *United Railroads,* 197 Cal. 148 [239 Pac. 1061], and this case is still recent enough to require no citation therefrom. However, quoting from the case of *Edwards* v. *Earnest,* 206 Ala. 1 [22 A. L. R. 1391, 89 South. 729], the question is whether or not the argument falls within that class of argumentative statements which are grossly improper and highly prejudicial and whose evil influence and effect cannot be eradicated from the minds of the jury by any admonition from the trial judge. There is no horizontal rule by which we may be governed to determine these qualities, but each case is to be decided on

its own merits, much depending upon the issues, the parties, and general atmosphere of the case.

In the instant case the record discloses that throughout the trial there had not been the slightest suggestion, insinuation, or intimation of the claim that defendant was insured. It is conceded that the evidence supports the verdict and it has not been claimed that the verdict is excessive. To hold that the language employed, which by some remote reference perhaps could have given the idea of a possible insurance, was potentially harmful and prejudicial to the extent of necessitating a new trial would be going a step too far beyond the theory or reason of the rule announced.

Judgment and order affirmed.

Knight, Acting P. J., and Cashin, J., concurred.