[Civ. No. 6945. First Appellate District, Division Two.—October 28, 1929.]

JOHN H. CRABBE et al., Respondents, v. IRA O. RHOADES, Appellant.

504

C. H. Sooy, Redman & Alexander, Redman, Alexander & Bacon, Herbert Chamberlin and Geo. Allan Smith for Appellant.

John H. Crabbe, *in pro. per.*, for Respondents.

LUCAS, J., *pro tem.*—The appeal in this case is taken from a judgment on a verdict for thirty-five thousand dollars obtained in the court below as damages for personal injuries sustained by Mary F. Crabbe in a collision between two automobiles and for the resulting loss of her services to John H. Crabbe, her husband. The drivers of both colliding cars were joined as parties defendant, and negligence on the part of both was alleged. By the verdict of the jury, however, defendant Olive Gaston, driver of the car in which Mrs. Crabbe was a guest passenger, was impliedly found free from negligence and the full amount of the verdict in favor of plaintiffs was rendered against the defendant Rhoades, appellant herein.

Without conceding that there was sufficient evidence of negligence on his part to warrant the case going to the jury, appellant takes the position that even if the evidence might be considered sufficient for that purpose, it is nevertheless so slight and unsatisfactory as to call for a reversal if any errors occurred in the trial or if any prejudicial matters were injected into the case. He then proceeds to

point out several matters and things wherein it is claimed the court erred, and directs attention to alleged prejudicial misconduct on the part of respondents' attorney. A casual examination of the record is sufficient to warrant the conclusion that the case was properly one for the jury on the question of the negligence of Rhoades; but a careful analysis of the evidence is necessary in order to determine whether the conduct complained of or the alleged errors of the court were such as to warrant a reversal of the judgment.

The undisputed facts are that plaintiffs and respondents, John H. and Mary F. Crabbe, are husband and wife, the husband being for many years a practicing attorney in San Francisco, and the wife, prior to her injury, being active in social affairs and club work. Mrs. Crabbe was fifty-two years of age at the time of trial. At about 11 o'clock A. M. on the morning of June 20, 1925, the defendant Olive Gaston, driving an inclosed Studebaker car weighing about three thousand four hundred pounds, and accompanied by Mrs. Crabbe, Mrs. Rose Hepburn and Mrs. Cordelia Page, left the Clift Hotel, in San Francisco, en route to a charitable affair at Menlo Park, San Mateo County. Mrs. Crabbe sat beside Mrs. Gaston in the front seat, Mrs. Hepburn and Mrs. Page occupying the rear seat. They had arranged to meet for luncheon another group of ladies at the Cafe de Paris, a cafe situated on the east side of the state highway leading from San Francisco to San Jose, immediately north of and adjoining the northerly limits of the incorporated city of Atherton.

At about 10:30 A. M. the same day appellant Ira O. Rhoades, a man past sixty years of age, left the city of San Jose in a Paige sedan, the weight of which was approximately four thousand three hundred pounds, and proceeded in a northerly direction on said state highway toward San Francisco. Mr. Rhoades was alone in the driver's seat, while the rear seat was occupied by his wife, Katherine Rhoades, and a Mrs. Lillian G. Thomas. Mrs. Rhoades, who had been confined to her bed in a San Jose hotel for about two weeks with a severe heart attack, was being taken to her San Francisco home.

The two cars came together at a point about opposite the Cafe de Paris. Here the paved portion of the highway is

thirty feet wide and runs in a generally northerly and southerly direction. The Gaston car was proceeding south on the westerly side of the highway; the Rhoades car was traveling north on the easterly side. As Mrs. Gaston's car approached the vicinity of the cafe she lessened its speed, and as she was passing, or had about passed, the cafe building proper she made a left turn across the highway to the east for the purpose of entering the south driveway of the cafe grounds. When her automobile, heading in an easterly direction, and at right angles to the highway, had practically crossed the paved portion thereof so that only about two feet of the rear of the car extended over the pavement on the east side of the road, the Paige sedan, driven by appellant Ira O. Rhoades, came into collision with the rear of the Gaston car. Neither car was overturned. The Rhoades car proceeded about thirty-five feet in a northerly direction after the impact; the Gaston car came to rest against a cement post and curbing about twenty feet easterly of the east edge of the pavement and directly in front of the cafe. This point was about twenty or twenty-five feet north of the point of impact. Previous to making the turn the Gaston car had been going in a southerly direction, but when it came to rest after the impact it was twenty or twenty-five feet farther back toward the north than it was when crossing the highway. It was also turned completely around, for while it had been facing east when the collision happened, when it came to rest the rear end was against the curb and the front was facing approximately due west.

Either at the time of the collision of the two cars or at the time the Studebaker struck the cement post and curb, Mrs. Crabbe was thrown against some part of the automobile in which she was riding and sustained the injuries complained of.

While these facts are necessary to an understanding of the case, they, of course, shed no light upon the subject of proximate cause. On this subject the evidence is decidedly conflicting. As to negligence on the part of defendant Gaston, it is practically admitted that she was guilty of negligence *per se* in not complying with the provisions of the motor vehicle law then in force (Stats. 1923, p. 558, sec. 130), requiring that

"(a) The driver of any vehicle upon a public highway before starting, turning or stopping such vehicle shall first see that such movement can be made in safety, and if it cannot be made in safety, shall wait until it can be made in safety; then, if the operation of any other vehicle may reasonably be affected by such movement, the driver shall give a signal plainly visible to the driver of such other vehicle of the intention to make such movement. . . . Whenever the signal is given by means of the hand and arm, the driver shall indicate his intention to turn to the left by extending his hand and arm horizontally from and beyond the left side of the vehicle, . . . The signal herein required to be given . . . shall be given continuously during the last fifty feet traveled by the vehicle before turning."

Whether or not Mrs. Gaston's violation of the above statute proximately contributed to the collision and the resulting injuries of Mrs. Crabbe is an entirely different question, which, whether rightfully or wrongfully, the jury answered in Mrs. Gaston's favor. Likewise all questions of negligence in fact were resolved in her favor. ▮ With the correctness of these findings we are not here concerned, for the fault of Mrs. Gaston, if any, however much it may have contributed to the injury, is no defense for one whose negligence helped to bring the injury about. (*Pastene* v. *Adams*, 49 Cal. 87.)

Negligence has been frequently defined as "The want of such care as a person of ordinary prudence would exercise under the circumstances of the case, the omission to do something which a reasonable man guided by those considerations which ordinarily regulate the conduct of human affairs would do, or doing something which a reasonable and prudent man would not do. . . . Negligence may be active or passive in character and may consist in heedlessly doing an improper thing or in heedlessly refraining from doing a proper thing. One who does not do what he should do is chargeable with negligence equally with him who does that which he should not." (19 Cal. Jur. 548.)

▮ Both an act of commission and one of omission are by plaintiffs and respondents attributed to appellant as negligence proximately contributing to the injury, namely: excessive speed and failure to ever so slightly turn his car

to the left so as to avoid the collision. On the latter subject it is undisputed that at the time of the impact practically all of the Gaston car was easterly of the paved portion of the highway, the rear of the car extending but two feet westerly over the easterly line of the pavement. It is clear, therefore, that if at that point appellant's car was traveling at a distance of but two and a half feet or more westerly of said line the collision would not have occurred. It is also made clear from the evidence that appellant observed the Gaston car when he was some forty or fifty feet southerly from it; that his view was unobstructed, and that there was nothing to interfere with his veering to the west on the paved portion of the highway sufficiently far to avoid the collision.

Concerning the rate of speed at which his Paige car was traveling, there is considerable conflict in the evidence. Rhoades himself testified that he was traveling at a rate of speed not to exceed twenty-five miles per hour at a place where the speed limit was said by the court in its instructions to be thirty-five miles an hour. The credibility of this party, however, was somewhat impaired by his subsequent testimony to the effect that at the time of the collision his car had come to a full stop and that the Gaston car ran into it. This testimony was impeached by the testimony of several witnesses and by the physical condition found to exist immediately after the impact. Several witnesses, including two state motor officers, testified that from the point of impact northerly for a distance of something like thirty-five feet or more there were black skid marks on the pavement leading to the point where appellant's car finally came to rest. These marks could not have been made had it been true, as appellant testified, that he stopped before the impact and then drove his car forward to its final stopping place.

Evidence tending to show that appellant was not traveling at an excessive speed was given by Bert L. Hackett, apparently a disinterested witness, who was driving northward behind Rhoades, and who testified that appellant was traveling at about twenty-five miles per hour. The force of this testimony, however, is materially lessened by the testimony of the two traffic officers that immediately after the accident Hackett had said that appellant passed him

"going like hell," and that "the man ought to be hung."
Furthermore, as opposed to the testimony of Rhoades and
Hackett is the testimony of Mrs. Hepburn, a guest of Mrs.
Gaston, who testified that in her opinion the Rhoades car
was traveling between fifty-five and sixty miles an hour
when she first saw it about 300 feet away, and that as a
result of the impact the Gaston car (admittedly traveling
at a slow rate of speed) was turned end for end by the
impact, and the further physical fact that when it came
to rest it was back from twenty to twenty-five feet in the
direction from which it had been coming.

This, and other evidence appearing in the record, which
it is not necessary to set forth in full, not only made out
a case of negligence on the part of appellant sufficient to
warrant it being submitted to the jury, but is of such pro-
bative value as to justify this court in holding that, on the
questions of appellant's negligence and proximate cause,
the judgment appealed from is amply supported by the
evidence.

The acts claimed by appellant to constitute prejudicial
misconduct on the part of respondents' attorney are said to
disclose an attempt to prejudice the jury against appellant
and his attorneys and to lead the jury to believe the appel-
lant was both wealthy and fully protected by insurance
while his co-defendant was a poor unprotected widow.
After examining the record and the remarks of counsel
assigned as error we find them to consist principally of
side-bar remarks, reflecting the ordinary attempt of a trial
lawyer to ingratiate himself with the jury. These, while
uncalled for, cannot be held to constitute prejudicial error.

As evidencing the conduct complained of, attention
is directed to the following statement made by respondents'
counsel in his argument to the jury: "Mr. Rhoades is a
man of importance. But we are not going to be appalled
by that fact surely. The fact that he happens to be a man
of power in the community, and presumably wealthy,—
that is not going to frighten me."

The statement of counsel that appellant was "a man
of importance" was justified by the showing in the record
of the positions he had held and by the argument advanced
by his own counsel in an endeavor to impress the jury
with his client's integrity. The statement that appellant

was presumably wealthy was entirely outside of the record and unjustified by the evidence. Immediately upon this statement being made, however, appellant's attorney assigned the remark as misconduct and asked that the jury be discharged. The court thereupon, while denying the motion, stated that there was no evidence in the record concerning the wealth of any of the parties, and instructed the jury to that effect, and that wealth was not a proper subject of discussion before the jury. There then ensued between counsel considerable argument in reference to the expression "presumably a man of wealth," resulting in a further instruction by the court to the jury to disregard the statement, a request by respondents' counsel that the court instruct the jury to disregard it, and a further statement by said counsel that there was no evidence before the jury with respect to the wealth of anyone, and that he did not claim there was any such evidence.

As was said in the case of *Perez* v. *Crocker*, 86 Cal. App. 288, 293 [260 Pac. 838, 840]: "The question is whether or not the argument falls within that class of argumentative statements which are grossly improper and highly prejudicial and whose evil influence and effect cannot be eradicated from the minds of the jury by any admonition from the trial judge. There is no horizontal rule by which we may be governed to determine these qualities, but each case is to be decided on its own merits, much depending upon the issues, the parties, and general atmosphere of the case."

Applying this rule to the occurrences just detailed, and bearing in mind that there is no claim of the verdict herein being excessive, we cannot say that the statement complained of was either grossly improper or highly prejudicial.

■ The following questions by respondents' counsel to appellant are also assigned as error:

"Q. Where was it (appellant's car) repaired? A. I don't know the name of the concern. Q. Did you select the name of the place to which it was taken for repairs?"

On objection this question was withdrawn. Thereupon, after appellant's attorney had given the name of Harding & Keene as the name of the firm repairing appellant's car, the following questions were asked:

"Q. Did you receive a bill from Harding & Keene? A. No sir. Q. Did you see the bill? A. No sir. Q. Did you pay the bill? A. No sir. Q. I asked you yesterday on the stand the place of your residence in San Francisco. What did you reply? A. I replied 1665 Eighth avenue. Q. Do you live there at the present time? A. Temporarily I have not been living there. Q. You live at the Fairmont, don't you? A. No, I don't live at the Fairmont. Q. Where do you live? A. I've been sleeping temporarily at the Mark Hopkins. I have been unable to sleep in my house in the evening."

References to the Fairmont and Mark Hopkins hotels, known to all San Franciscans as hostelries of the better class, are said to have been made for the purpose of showing that appellant was a man of means; and the questions concerning the place where his car was repaired and whether or not he received or paid the bill therefor are said to have been asked for the purpose of suggesting to the jury that some insurance company was paying the bill.

The record shows, however, that preceding the question "Where was it (appellant's car) repaired" counsel had asked about the injuries to the car, where it was taken after the accident, and whether the witness remembered the name of the garage in Redwood City where it was taken, and then asked, "Did you select the place where it should go to?" Counsel objected, and the court said: "They have a right to inquire where it was brought so they can inquire there what repairs were made." The question was again asked and, upon objection, withdrawn. Then came the question: "Did you receive a bill for the repairs?" After objection the court said: "If you have the bill, produce the bill, and they can inquire there what repairs were made." Appellant's counsel then furnished the name of the firm repairing the car, and respondents' counsel asked: "Did you receive a bill from Harding & Keene's?" This was not objected to. Counsel asked that the answer be stricken out, and the court, in denying the motion, said: "Suppose he had a bill and it said that such and such a part of the machine was repaired . . . if he does not remember he can look at the bill and refresh his memory." The question, "Did you see the bill?" was asked by the court and was not objected to; and the question, "Did

you pay the bill?'' asked by respondents' counsel was likewise not objected to. It is quite apparent that in this series of questions the only one that counsel could possibly assign as error is the one that was withdrawn, i. e., ''Did you select the name of the place to which it was taken for repairs?'' Appearing in the place it does in the record, where inquiry was being made about repairs, it is proper cross-examination and not prejudicial as being suggestive of insurance.

To say that the other questions asked in reference to appellant's residence constitute or tend to constitute reversible error we feel would be to greatly exaggerate their importance. Furthermore, they were not objected to.

The trial court's action in admitting in evidence a photograph of respondent Mary F. Crabbe, taken a short time after the accident and after her first operation, is also assigned as reversible error. The facts are that Mrs. Crabbe was frightfully injured about the head and face, one cheek-bone was crushed, the sight of one eye destroyed and the eye itself removed. Owing to the destruction of the cheek-bone she will never be able to wear an artificial eye. The photograph objected to was taken by Dr. Smith before the plastic surgery was done, or, as he expressed it, before he ''commenced the big job of trying to mold back her face into presentable shape.'' It is true that there is a shocking contrast between the photograph of Mrs. Crabbe taken before the accident and offered and received in evidence and the one taken after the preliminary operation and before the plastic surgery was done, and it is also true that Mrs. Crabbe was present in court and the jury had an opportunity of seeing her in person; but they could not get a proper appreciation of her appearance and the attendant physical and mental suffering that must have been hers prior to the plastic surgery without such a photograph. In the opinion of this court it was clearly admissible on the question of damages, and there being no complaint that the damages awarded are excessive, appellant's point appears to be without merit. In urging the point, however, appellant cites authority from Wigmore on Evidence, second edition, volume 2, page 97, section 792 (2), as follows: ''There may be an objection . . . to the reproduction of a corporeal in-

jury . . . calculated unduly to excite sympathy for one party and unfair prejudice against the other."

In the original text the language quoted is followed, in the same sentence, by the statement that the objection referred to therein is identical with an objection considered in subsequent sections of the text-book. An examination of these sections shows the true rule to be that the admissibility of such evidence is clearly within the discretion of the trial court. There was no abuse of discretion here.

■ Another claim of error is based upon the admission of a certain conversation claimed to be prejudicial. This conversation was said by a disinterested witness, who was present immediately after the accident, to have taken place between Mr. Rhoades and Mrs. Gaston. The record follows: "Q. Did you hear any conversation between them? A. Yes sir. Q. Can you tell us what that conversation was?" (Objected to and overruled.) "Q. Will you tell what it was? A. Mr. Rhoades said to Mrs. Gaston, 'Why didn't you hold out your hand,' and she said, 'I did; you must have been going at a fearful rate of speed.' Q. Is that all the conversation? A. Well, that is the conversation I heard. Q. That is all the conversation you heard? Now, were you occupied— A. In attending this lady, yes, stopping the blood."

The substance of the conversation was really an accusation and a counter-accusation on the part of the drivers of the two colliding automobiles, each attributing negligence and wrongdoing to the other. The difference between the two is that Mrs. Gaston denies Rhoades' accusation, while the witness did not hear Rhoades' reply to Mrs. Gaston. The reply not being given, there is no proof that the accusation by Mrs. Gaston was admitted by Rhoades. The accusation of excessive speed, therefore, had little or no weight, particularly since Rhoades in his examination was given the opportunity to, and did, deny it.

Coming now to the subject of instructions, our attention has been directed to some twenty or more which are said to be contradictory, erroneous or prejudicial. With respect thereto it is urged that since it is practically an admitted fact in the case that Mrs. Crabbe was entirely free from negligence, the real contest is one between appellant Rhoades and his co-defendant Mrs. Gaston; that, therefore, each of

the co-defendants was vitally interested in and affected by the instructions of the court bearing on the conduct and rights of the other, and that anything tending to relieve the defendant Gaston of responsibility or to unduly favor her was prejudicial against appellant's defense that Mrs. Gaston, and not he, was to blame. Much of the criticism we find unmerited; some of it is well taken.

We feel that it is unnecessary to here discuss all of the instructions which we find to be erroneously assigned as error or which, while containing some slightly objectionable matter, are on the whole more favorable to appellant than to defendant Gaston, but will more particularly confine our discussion to those which we believe to be error and to an endeavor to determine whether that error is sufficiently prejudicial, under the law and the facts of the case, to warrant a reversal.

Instruction 55 is an example of one erroneously assigned as error. It reads:

### "LV.

"I instruct you that defendant, Olive Gaston, had a right to assume that other persons using said highway at the time and place in question, would so operate their automobiles as to permit other persons operating automobiles, and in the exercise of ordinary care, to do so without endangering life, limb or property."

This is a correct statement of the law. A person operating an automobile has the right to assume that others will so operate their automobiles as to permit drivers exercising ordinary care to operate their automobiles without endangering life, limb or property.

Instruction 15 may be used as an example of an instruction containing slightly objectionable matter but which on the whole was more favorable to appellant than to Mrs. Gaston and was therefore not prejudicial. This instruction contains the expression: "If you further find that she (Mrs. Gaston) observed the car of the defendant Ira O. Rhoades approaching at an *exceedingly fast rate of speed* for that time and place, she, the defendant, Olive Gaston, was no longer entitled to rely upon the presumption that the defendant Rhoades would comply with the rules of the road, and she was bound to take such reasonable

measures as she could, under the circumstances, to prevent a collision."

The instruction is attacked upon the ground that it contains the expression "exceedingly fast rate of speed," which of itself does not imply an illegal rate of speed; and furthermore, on the ground that the liability of Mrs. Gaston was predicated upon her failure to use ordinary care only after having seen the Rhoades car appoaching. As a matter of fact, the instruction contained the admonition that a motorist must at all times use due care to avoid colliding with another, and must be ever alert and watchful so as not to place himself in danger.

The following instructions may be said to be more or less objectionable:

1. Instruction 69. "LXIX. I instruct you that if you find from the evidence that defendant Rhoades was operating his automobile at a high rate of speed at the time defendant Olive Gaston saw his automobile approaching, and that she turned her automobile to the left after seeing his automobile approaching, this would not necessarily be negligence on her part. She cannot be held to be negligent on this account unless the speed of the approaching Rhoades car was apparent to and realized by her."

This instruction would have more correctly stated the law had it read: "she cannot be held negligent on this account (turning after seeing appellant approaching at a high rate of speed) unless the speed of the approaching car was or *should have been* apparent to and realized by her." A person is chargeable not only with what they know, but with what a reasonably prudent person ought to know.

2. Instruction 26. This instruction contains the language: "The State Motor Vehicle Act also provides that the operator of a vehicle shall yield the right of way at the intersection of their paths to a vehicle approaching from the right, unless such vehicle approaching from the right is further from the point of intersection of their paths than such first named vehicle."

At one time this was the law. (Stats. 1919, p. 215, sec. 20 (f).) But under the provisions of section 131 of the Motor Vehicle Act of 1923 (Stats. 1923, p. 560), in force at the time of the accident in question, it appears that this rule is applicable only at street intersections. This erro-

neous rule was injected into the instruction as a basis for an admonition to the jury that "It does not follow that one who changes his course to the left to cross the highway is entitled to the whole protection of this rule, for common sense tells us that he is bound to exercise great care to avoid colliding with machines that are on the highway and across whose path he must travel. That was what the legislature had in mind when it provided that a vehicle, before starting to turn, 'shall see first that there is sufficient space for such movement to be made in safety,' so that the practical effect of this provision is to cast upon motorists intending to turn the duty of exercising greater care than is ordinarily required of them."

 3. Instruction 66. "The jury are instructed that the defendant Olive Gaston, at the time she made the turn on the highway, was not bound to assume that the defendant Rhoades would abandon any reasonable precautions or violate any obligation imposed upon him by the laws of the land. The defendant Olive Gaston in this case was authorized to assume that the defendant Rhoades, and all other persons using the road, would do so with ordinary care and would observe the rules of the road as established by law. In other words, the defendant Olive Gaston, when turning her car on the highway, was entitled to assume that the defendant Rhoades would comply with the requirements of the Motor Vehicle Act that he drive his car at such a speed as not to endanger the life, limb or property of any person."

The vice of this instruction is, that while Mrs. Gaston might be entitled to certain assumptions, those assumptions would avail her nothing unless she herself were free from negligence.

 4. Instruction 68. The same criticism may be leveled at this instruction, which contains the words: "I instruct you that defendant Olive Gaston had a right to presume that drivers of other automobiles would not operate them at an unlawful rate of speed." According to the case of *Carroll* v. *Central Counties Gas Co.*, 74 Cal. App., at page 309 [240 Pac. 53, 55], the correct rule is: "One who is himself not negligent is entitled to rely upon the presumption that others will exercise due care, so that it is not negligence to fail to anticipate danger which can come only from a violation of law or duty upon the part of

another. . . . But reliance upon this presumption does not excuse one who is himself negligent.''

5. Instruction 61. ''LXI. I charge you that the law presumes that a person saw that which, in the exercise of ordinary care, he could have seen. If you find from the evidence that defendant Olive Gaston did give a signal of her intention to turn her automobile to the left in the direction of the entrance to said Cafe de Paris, and if you find that an automobile driver operating an automobile in the place at which, from the evidence, you find that defendant Rhoades was operating his automobile at the time said signal was given on the day of said accident, would have seen said signal, then the failure of said defendant Rhoades to see said signal would be negligence on the part of said defendant Rhoades.''

In view of the fact that Mrs. Gaston herself testified that she did not give the fifty-foot turning signal required by law, appellant would hardly be chargeable for failing to observe a last-minute signal. Furthermore, the instruction omits the qualification of the automobile driver being a reasonably prudent person.

6. Instruction 63. ''LXIII. If you find from the evidence that a person operating an automobile at the place at which defendant Rhoades was operating his automobile at the time defendant Olive Gaston signaled her intention to make the turn into Cafe de Paris, if you find she did give such signal, could have seen such signal, and in the exercise of ordinary care could have stopped or turned his automobile, and thereby have avoided said collision, then the failure of said defendant Rhoades so to do was negligence on his part.''

This instruction likewise omits the qualification of the person driving the automobile being a reasonably prudent person, and omits reference to the duty of Mrs. Gaston to give the fifty-foot turning signal.

7. Instruction 51. ''LI. If you find from the evidence that the defendant Olive Gaston, at the time she started to turn her automobile to the left, misjudged the distance between her automobile and that of defendant Rhoades, or if she misjudged the speed of the automobile of defendant Rhoades, this would not necessarily be evidence of negligence on the part of defendant Olive Gaston. She

was only bound to use ordinary care to avoid collision between her automobile and other vehicles. If you find that an ordinarily prudent person, in the exercise of ordinary care, would have misjudged such distance, or speed, or both, under the same circumstances, then I instruct you that such misjudgment was not negligence, and your verdict will be in favor of defendant Olive Gaston.''

This instruction practically directs a verdict in favor of defendant Gaston if her act of misjudging speed and distance were the act of an ordinarily prudent person. This instruction eliminates all other negligence on the part of Mrs. Gaston of which she might have been guilty, including negligence *per se* in turning without complying with the provisions of the Motor Vehicle Act.

8. Instruction 14. ''XIV. If you find that the separate, but concurrent, negligence, if any, of the drivers of both automobiles proximately contributed to the injuries to Mary F. Crabbe, if any, then and in that event I instruct you that the plaintiffs are entitled to recover from either the defendant Olive Gaston or the defendant Ira O. Rhoades, or from both the defendants Olive Gaston and Ira O. Rhoades.''

This instruction is erroneous, for were the jury to find that the negligence of the drivers of both automobiles proximately contributed to Mrs. Crabbe's injuries they should in that event find against both drivers.

Other instructions, given on the subject of damages, were complained of, but we feel that owing to the character of the injuries sustained by Mrs. Crabbe and the fact that approximately five thousand dollars was expended by Mr. Crabbe for medical and hospital services alone, and since no question is raised as to excessive damages, that such technical objections as may be raised thereto are without merit.

The foregoing instructions we believe to constitute all of those concerning which appellant has any cause for complaint. However, before concluding what effect, if any, these instructions had upon the jury, it is only fair to call attention to other instructions which were given.

On the subject of proximate cause the jury was fully instructed in general language; and so far as appellant Rhoades is concerned it was advised in instruction 29 that

"If the operation of Mr. Rhoades' automobile might reasonably have been affected by the turn of Mrs. Gaston's automobile, then it was Mrs. Gaston's duty to give a signal plainly visible to Mr. Rhoades of her intention to make such turn. Such signal could have been given by the use of her hand and arm, or by means of a mechanical or electrical device; therefore, if you find that Mrs. Gaston turned her automobile across the road, and if you also find that the turn reasonably affected the movement of Mr. Rhoades' automobile, then it was Mrs. Gaston's duty to give a signal of her intention to make the turn; and if you find that she failed to give a signal, and if you also find that this was the entire proximate cause of the accident, then Mr. Rhoades is exonerated from liability in this case and your verdict must be in his favor."

The jury was also instructed as to the provisions of the Motor Vehicle Act in reference to the giving of signals before turning on the highway, the section first above quoted herein having been read in full to the jury.

It was also instructed:

## "XXXI.

"Even if Mrs. Gaston gave a signal of her intention to turn, that did not exonerate her from the duty of looking to see whether she could make such turn in safety. Therefore, even if you find that she gave a signal of her intention to make the turn but if you also find that she did not first observe whether the turn could be made in safety, and if you further find that her failure to see if the turn could be made in safety was the sole proximate cause of the accident, then this completely exonerates Mr. Rhoades, regardless of the fact whether Mrs. Gaston did, or did not, give any signal."

## "XXXIII.

"If you find that Mr. Rhoades, driving the Paige automobile, exercised ordinary care and caution in driving it, that is to say, if he exercised such care and caution as a reasonably prudent person would have exercised under the same or similar circumstances, then he is not legally chargeable with responsibility for the accident, and in such case your verdict must be in favor of Mr. Rhoades and you must not award any damages against him."

## "XXXVIII.

"If in this case you find that the evidence is so equally balanced that the scales of proof hang even on the question whether Mr. Rhoades was or was not negligent, then your verdict must be in his favor, and you cannot award any damages against him regardless of what your verdict may be as to Mrs. Gaston."

## "XLV.

"If you find that Mrs. Gaston was driving in a southerly direction along the highway, and if you also find that she intended to turn to cross the road, and did so, and if you also find that automobiles were approaching from the south, but that Mrs. Gaston failed to use ordinary care in making the turn, and that by reason of her lack of care in making the turn she drove directly in the path of Mr. Rhoades' automobile, and if you also find this was the entire cause of the accident, then this completely exonerates Mr. Rhoades, and you must not award any damages against him."

These constitute only a few of many instructions eminently fair to appellant and fully charging the jury as to the responsibilities of Mrs. Gaston.

From the foregoing statement concerning instructions, and in the analysis thereof, it is apparent that error has been committed. Whether such error is sufficient to warrant a reversal of the case is the sole question for this court to decide. As to the law, the appellant cites the case of *Scarborough* v. *Urgo,* 191 Cal. 341 [216 Pac. 584, 588], as illustrative of a case where the unduly favoring of one defendant in the giving of instructions prejudiced the rights of the other. The court there said:

"Moreover the rules of the road were stated in the instructions more favorably to the defendant Urgo than is warranted by the law. To be sure, the defendant Transit Company is not entitled to complain of the fact that its codefendant unjustly escaped liability, . . . but it is, we think, entitled to complain of an incorrect instruction as to the rules of the road applicable to its codefendant," etc.

In that case the judgment of the lower court was reversed, not on account of the giving of an incorrect instruction, however, but because the court refused to give one to which

appellant was *clearly entitled*. This, it was held, resulted in a miscarriage of justice.

It has also been held that a defendant may not complain because instructions given are too favorable to his co-defendant (19 Cal. Jur. 765) ; and that even if instructions be held erroneous as unduly favoring one defendant against his co-defendant, this would not justify the granting of a new trial upon the part of such co-defendant who himself was guilty of negligence proximately causing or contributing to the injury. (*Goehring* v. *Rogers*, 67 Cal. App. 255, at 259 [227 Pac. 687], comment of Supreme Court in denying the petition to have cause heard in said court.)

With these rules in mind, it is clear that the liability of appellant Rhoades depended entirely upon the answer to the questions whether he himself was or was not negligent, and whether or not such negligence, if it existed, proximately caused or contributed to the injuries complained of. These questions are wholly independent of the question as to whether or not his co-defendant Gaston was also liable.

Had this been an action brought by Mrs. Gaston against Rhoades undoubtedly the giving of the instructions criticised herein would have constituted reversible error, but being an action by an innocent third party against both the situation is entirely different.

"No judgment shall be set aside, or new trial granted, in any case, on the ground of misdirection of the jury, or of the improper admission or rejection of evidence, or for any error as to any matter of pleading, or for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." (Art. VI, sec. 4½, Const. of Calif.)

Can it be said after an examination of the entire cause, including the evidence, that the giving of the instructions in question resulted in a miscarriage of justice?

The record shows that the trial of the cause began on May 16, 1927; the instructions were read to the jury ten days later. During that period of time testimony filling over six hundred pages of the printed transcript was taken. At the conclusion of the hearing the court gave to the jury some eighty-three instructions, which fill thirty-six pages

of the transcript. Conservatively estimated, it took the court fully an hour to read the instructions to the jury. Without commenting on the capacity of a jury to comprehend and apply to the facts all of the fine distinctions of the law presented to it in such circumstances, we feel that unless it is made clearly to appear that there has been a miscarriage of justice and that the cause thereof was the errors complained of, a new trial should not be had. Taking a broad view of the situation, we cannot say that there has been any miscarriage of justice. Through no negligence on the part of Mrs. Crabbe she suffered frightful and permanent injuries which can hardly be compensated for in dollars and cents. The evidence is sufficient to warrant a court and jury in holding the appellant guilty of negligence proximately causing or contributing to these injuries. He cannot be heard to complain of the fact that his co-defendant unjustly escaped liability. (*Scarborough* v. *Urgo, supra;* 19 Cal. Jur. 765; *Goehring* v. *Rogers, supra.*)

Had the verdict gone against both Mrs. Gaston and Mr. Rhoades the latter would be in no better position than he is to-day with the judgment standing against him alone, for respondents could hold him responsible for the entire judgment.

The judgment appealed from is affirmed.

Nourse, Acting P. J., and Sturtevant, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on November 26, 1929, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 26, 1929.

All the Justices present concurred.