[Civ. No. 8696. Second Appellate District, District Two.—October 31, 1934.]

PAUL K. ALBERTS, Respondent, v. KENNETH LYTLE et al., Defendants; LOS ANGELES RAILWAY CORPORATION (a Corporation), Appellant.

Gibson, Dunn & Crutcher, Philip C. Sterry and E. H. Chapman for Appellant.

Crail, Shutt, Penprase & Crail, and Edward A. Penprase for Respondent.

PACHT, J., *pro tem.*—About 1 A. M. of the fifteenth day of December, 1929, while the plaintiff was standing between a fire plug and a light post on the southwest corner of Vermont Avenue and Monroe Street in the city of Los Angeles, a collision occurred between a street car owned and operated by the defendant, Los Angeles Railway Corporation, and an automobile owned by the defendant Earl D. Lytle, and operated by his son, Kenneth Lytle. As a result of this collision the automobile swerved or skidded onto the sidewalk, struck the plaintiff and inflicted upon him very serious injuries for which, upon the verdict of a jury, he was awarded a judgment in the sum of thirty thousand dollars ($30,000) against the defendants Los Angeles Railway Corporation and Kenneth Lytle, and five thousand dollars ($5,000) (the maximum statutory liability) against defendant Earl D. Lytle.

"No appeal has been prosecuted by the defendants Lytle, but the defendant Los Angeles Railway Corporation appeals from the judgment claiming, (a) that the evidence was wholly insufficient to sustain a finding of negligence on its part and for that reason the trial court should have granted its motion for a nonsuit and a directed verdict, (b) that it was prevented from having a fair trial by the alleged inflammatory argument to the jury made by counsel for the plaintiff, and that it was reversible error for the trial court

to deny its motion for a mistrial because of certain remarks made by plaintiff's attorney in the course of his summation, (c) that the trial court erred in its instructions to the jury concerning the liability of the defendant Earl D. Lytle, (d) that the giving of certain instructions to the jury requested by plaintiff and the refusal to give certain instructions requested by the defendant Los Angeles Railway Corporation constituted reversible error.

*Did the Trial Court Err in Refusing to Grant Appellant's Motion for a Nonsuit and a Directed Verdict?*

■ Inasmuch as appellant challenges the sufficiency of the evidence to support the verdict, we have reviewed the record to determine whether or not, under the established rule, there was sufficient evidence to warrant the trial court in submitting the issue of appellant's negligence to the jury. The transcript discloses the following situation: The plaintiff, twenty-one years of age and a senior at the University of Southern California, was standing on the southwest corner of Vermont Avenue and Monroe Street waiting for a street car. As noted above, the accident occurred at 1 A. M. of the 15th of December, 1929. "At the scene of the accident, Vermont Avenue running north and south is intersected by Monroe Street running east and west. However, there is an offset, the western intersection being some 45 feet north of the point where Monroe intersects from the east." At the intersection Vermont Avenue is 70 feet wide and Monroe Street is 30 feet wide. The street car tracks for northbound cars on Vermont Avenue turn to the west onto Monroe— terminating one block west of Vermont at New Hampshire Street. There is no "stop" sign at the northwest corner of Vermont Avenue and Monroe or any other sign or signal to warn southbound automobile traffic on Vermont Avenue that the northbound tracks on Vermont turn west at Monroe. The street car in question was northbound on Vermont Avenue and had stopped at the southeast corner of the intersection to discharge a passenger. After the car had started from the southeast corner the motorman saw the lights of the automobile being driven by the defendant, Kenneth Lytle, in a southerly direction. At this time the machine was about 300 feet north of the western intersection of Monroe Street and the motorman testified he could not then gauge the speed

at which it was traveling. Thereupon the motorman proceeded to negotiate the turn to the west at the same time that he was observing ("at a glance") the machine coming south. The motorman's course is then best stated by him as follows: "Just before I started onto the curve I observed the automobile was traveling about 30 miles an hour—that was just as I was entering the curve. At that time, when I was just entering the curve the automobile was 175 feet or so north of Monroe street. . . . When I started into the curve I saw the automobile approaching at about 30 miles an hour, at which time it was about 175 feet away. I testified in the case of *Sauer* v. *Los Angeles Railway Corporation,* at which time I testified that I started into the curve, and by that time I was within 100 feet of the car." He testified further that after he was in the turn approximately 20 feet and realizing that the automobile was not slowing down, he applied the emergency brake and brought the street car to a stop within about 20 feet "with the front end of my car about in the center between the second line of Vermont and west curb. Just as I stopped my car the automobile was 6 to 8 feet from the street car coming straight for it, and as I stopped, the automobile swerved and skidded into the front of the street car, knocking off the fender and the left front step, and that threw the automobile around the other way and it skidded into a water hydrant and lamp post on the southwest corner of Monroe", knocking the plaintiff down and causing him the painful and permanent injuries proven upon the trial. Plaintiff was permanently crippled, partially paralyzed and facially greatly disfigured.

The evidence is in sharp conflict as to whether or not the motorman gave any signal in the way of sounding his gong before entering the turn and as to the speed of the street car while negotiating the curve. The plaintiff and Mrs. Adams, a passenger in the front seat of the automobile, testified that they heard no gong, and the motorman and conductor and at least one other witness for the defendant testified that the motorman and conductor did exchange the usual starting signals when the street car started from the southeast corner. The evidence is likewise in conflict as to whether or not the street car was moving or had been brought to a stop when the two vehicles came into collision. Witnesses for the plaintiff testified that the street car crashed into the automobile

and that it was still in motion at the time of the impact. Photographs of the automobile taken after the accident show that the extreme rear left portion of the machine was badly bent and damaged and that the front of the machine remained practically untouched. There was evidence on the part of the defendant Los Angeles Railway Corporation that the street car had come to a stop by the application of the emergency brakes and reverse appliances when the automobile driven by Lytle came into contact with it.

The driver of the automobile, after stating that he was driving south on Vermont Avenue; that the streets were a trifle damp due to a light or high fog; that he could see ahead approximately one-half to three-fourths of a block; and that the headlights on his machine were burning, testified as follows: "As I approached Monroe Street I saw the northbound street car. When I first saw it, it was approximately 200 feet south of Monroe Street. I do not recall whether I knew it was in motion or was stationary when I first saw it. The lights were burning on the car. . . . As I approached Monroe Street I was traveling 25 to 30 miles per hour and I was traveling about the same speed as I entered the intersection. . . . I did not see the street car as I entered the intersection of Monroe. The recollection I have of seeing the street car was when it whipped around that turn. I mean by that it did not take the turn very slow. When it started into the turn it came around in a large sweep. At the time I had an opportunity to approximately gauge the speed of the street car as it swung around the turn. It was traveling 12 to 14 miles per hour. The collision occurred about half way between the west curbline of Vermont and the center of Vermont. . . . I do not remember whether the front end of my car was over the south tracks shown on the map or not, but it had passed the north tracks. I have indicated that the largest proportion of my car was past the north car tracks, and that is correct. After the street car hit my car, it threw my car in a sort of semi-circle, throwing the right rear into the lamp post and water plug, and it bounced back toward the center of the right hand side of the street south of both tracks."

Lucy Adams, a witness on behalf of the plaintiff, testified as follows: "I was riding with Kenneth Lytle on the morning of December 15th, 1929, sitting in the right hand front

seat of the automobile. No one else was in the car. The street car struck us, struck the left rear portion of the automobile. As we entered the intersection I did not see the street car until it was right on top of us. It was in motion when I first saw it. I looked up, I just saw these lights coming right for us. I looked up and saw the lights and the street car just bearing right down on us, like it was coming—it seemed to come fast and right for us. I am not exactly certain how far away the car was when I observed this, possibly 5 or 6 feet. . . . When I saw this the automobile was over the north car tracks—not completely over but we were advancing into the north car tracks at that time, I believe. I do not think we were completely over the north car tracks. As our car entered the intersection I did not hear any bell or gong or signal of any kind from the street car. There was a fog that night; it was a visible fog, the street seemed to be damp. It was not so thick that you could not see a light. As we approached Monroe Street I should say we were traveling about 20 or 30 miles per hour.''

Whether or not the motorman was at the time and place in question and under the circumstances then and there existing guilty of negligence proximately contributing to the accident was, it seems to us, definitely a question of fact to be determined by the jury under appropriate instructions. Appellant argues that its motorman had a perfect right to assume that the automobile was being operated in a careful manner and that the driver having seen the street car would not drive his machine into and across the intersection without taking note of the position and course of the street car; that the motorman had a right to rely on such assumption and to continue to operate his car until something happened which would warn him to the contrary. (*Arnold* v. *San Francisco-Oakland Terminal Rys.*, 175 Cal. 5 [164 Pac. 798]; *Billig* v. *Southern Pac. Co.*, 192 Cal. 357 [219 Pac. 992].) But whether his conduct on the occasion in question was that of a reasonable and prudent man was a fair question for the determination of the jury. (*Shipley* v. *San Diego Elec. Ry. Co.*, 106 Cal. App. 659 [289 Pac. 662]; *Donat* v. *Dillon*, 192 Cal. 426 [221 Pac. 193].)

There is no analogy between the conditions and circumstances existing in the case at bar and those under con-

sideration in *Billig* v. *Southern Pac. Co., supra,* a case much relied on by appellant. In the Billig case the Supreme Court was passing upon the rights and duties of motorists approaching the track of a suburban electric railway and the corresponding rights and obligations of an engineer or motorman of a suburban train being operated along a private right of way.

In the instant case both the automobile and the street car were being operated on well traveled city streets at a point where a left-hand turn presented some elements of danger.

Granting that it is the function and right of street railways to provide rapid transit, it still remains the obligation of their motormen to operate their street cars consistent with ordinary care and at a reasonable rate of speed, taking into account conditions and circumstances as they exist at a given time and place (*Arnold* v. *San Francisco-Oakland Terminal Rys., supra*). The District Court of Appeal said in *Shipley* v. *San Diego Elec. Ry. Co., supra:* "It has been held by a long line of well-considered decisions that the public streets of a city are constructed for the use of all travelers, and that a public service corporation operating street-cars has no greater or superior right to use these streets than any other person or persons, with the exceptions, that, as the street-car travels upon its tracks from which it cannot turn, other traffic must recognize this fact and govern itself accordingly, and the driver of a motor vehicle must obey the provisions of the California Vehicle Act. The rights and duties of those in charge of a street-car are reciprocal with the other users of the public streets." This case cites and applies many other California cases.

As to the plaintiff, both the motorman and the motorist were under the duty of so operating their respective vehicles as to avoid a collision and injuring him. (See *Aungst* v. *Central Cal. Traction Co.,* 115 Cal. App. 116 [1 Pac. (2d) 56].) The court there said: "While street cars must run upon the tracks provided for them, they have no absolute or preeminent right of way over intersections, but must use the same with due regard to the safety and rights of the general public."

It seems to us that the whole situation here presented warranted the jury in finding both the driver of the auto-

mobile and the street car negligent. We conclude, therefore, that it was not error for the trial court to deny appellant's motion for a nonsuit and a directed verdict.

*Was the Summation of Respondent's Attorney So Inflammatory as to Prevent Appellant from Having a Fair Trial?*

That the argument as a whole was not of an inflammatory nature is best demonstrated by the fact that counsel for the appellant found only three occasions for interposing objections, and these we will presently discuss. █ Had the atmosphere of the trial been charged with a passion or prejudice against the Railway Company, it would surely have revealed itself in the size of the verdict rendered—yet the amount awarded the plaintiff, considering the serious and permanent nature of his injuries, does not disclose a disposition on the part of the jury to deal unjustly or inconsiderately with appellant's rights in the premises.

We are thus brought to a consideration of the three instances when the remarks of respondent's counsel brought forth specific and timely objection. █ The first occurred near the end of the opening argument when counsel for respondent, in order to bring to the attention of the jury the fact that the street car crew was on the occasion in question in a hurry to reach the terminus of the line and therefore operating the street car in negligent disregard of approaching traffic said, ''Have you ever had the experience of riding on a street car close to the end of the line? If you have not, just notice it the next time—this case will be decided by then—but just watch the activities of the motorman and conductor within about a block or a block and a half or two blocks from the end of the line, and see how much activity there is, and what they do; and observe the manner and method in which the motorman stops and starts his car—''

To these remarks an objection was interposed, a request made to have the jury disregard them, and an assignment of prejudicial error made. Upon examination of the transcript we find that there was evidence in the record that this was the crew's last run on that particular morning, and that both motorman and conductor had been on duty since 4 P. M. The invitation to the jury to observe the conduct

of a street car crew when nearing the terminus of a line upon any occasion other than the one in question was manifestly improper, and the trial judge so advised the jury and instructed them to disregard the objectionable statement.

The second statement urged as reversible misconduct was made in the course of the closing argument. Apparently only the opening and closing arguments of respondent's counsel were reported and no transcript of the argument made to the jury by appellant's attorney is incorporated in the record on appeal, hence it is quite difficult to determine what, if any, statements of appellant's counsel should have called forth the following remark on the part of the attorney for the plaintiff, "Mr. Penprase: Try everybody but the defendant! Now, Mr. Penprase is on trial! My conduct during the course of the trial does not meet with the approval of this big, rich corporation—", but in any event they were grossly improper. Upon objection being made, the trial court immediately admonished the jury to disregard the remarks and warned counsel to confine himself to a discussion of the evidence. Moreover, when charging the jury, in addition to advising them to consider the case as though the litigants were individuals, without prejudice or passion or sympathy for or against any of the parties, the court specifically admonished the jury as to the matter under immediate consideration in the following pertinent language: "and disregard any statement of counsel that is not supported by the evidence; and in this connection I want to particularly admonish you that you should disregard the statement made by the attorney for the plaintiff in his argument to you as to 'this rich corporation'. In making that statement counsel was carried away undoubtedly by his excitement in the trial of the case. There is no evidence in this case that this is a rich corporation. It may be bankrupt for all you know, or for all I know. This is just an evidence of the fact that you should not consider anything that is unsupported by the evidence in the case; and any statement made by counsel which is not supported by evidence should be entirely disregarded by you".

Whether or not the remark in question affected the jury's judgment in passing on the liability of the railway company or the amount of damages to be awarded was a question which the trial judge was best able, in the exercise of a

sound judgment, to determine. ▮ The trend of recent decisions seems to definitely indicate that when counsel's misconduct is one of the grounds urged upon a motion for a new trial, and the motion is decided adversely to the losing party by the trial judge, his decision will not be disturbed on appeal except a plain abuse of discretion is clearly shown. (See *Aydlott* v. *Key System Transit Co.*, 104 Cal. App. 623 [286 Pac. 456]; *Lafargue* v. *United Railroads*, 183 Cal. 729 [192 Pac. 538]; *Crabbe* v. *Rhoades*, 101 Cal. App. 503 [282 Pac. 10]; *Handley* v. *Lombardi*, 122 Cal. App. 22 [9 Pac. (2d) 867]; *Perez* v. *Crocker*, 86 Cal. App. 288 [260 Pac. 838].)

▮ The last remark to which exception was taken and which was assigned as misconduct is the concluding sentence of the address of respondent's counsel, reading as follows: "It was a most unfortunate situation that in so far as the plaintiff is concerned there were no eye-witnesses other than the interested parties, that is, the motorman of the street car and the driver of the automobile, Kenneth Lytle." No request was made for the trial court to instruct the jury to disregard the objectionable remark, nor was any motion made to strike the statement; but the court did say, "The jurors heard the testimony", which in effect was a direction to them to be guided only by the testimony which they heard and not by the statement of respondent's attorney. Appellant challenges the accuracy of the remark, claiming that he was in effect telling the jury that three of appellant's witnesses did not see the accident. A reference to the transcript discloses that two of them did not in fact see the impact. A third witness, Ballestra, testified that he did. The statement of respondent's counsel was, to this extent, inaccurate—unless he meant to assert that Ballestra had testified untruthfully. In any event, the jury was promptly advised to rely on the testimony which they heard, and in addition thereto were instructed at the close of the trial "to disregard any statement of counsel that is not supported by the evidence". It seems to us that appellant attaches an importance to the remark of counsel altogether out of proportion to its real significance, and we do not believe that it in any way misguided the jury in their fair and proper deliberations on the case.

*Claimed Error in Instructions as to Liability of Defendant Earl D. Lytle.*

 We find no merit in the contention of appellant that the trial court erred in its instructions to the jury as to the liability of defendant Earl D. Lytle. He was the owner but not the operator of the automobile nor was it being driven on his business. It was, however, being used by his son, Kenneth Lytle, with his knowledge and consent. The trial judge instructed the jury that in the event they found a verdict against Kenneth Lytle they must also find a verdict against defendant, Earl D. Lytle, but as to the latter in a sum not greater than $5,000. This was strictly in consonance with section $1714\frac{1}{4}$ of the Civil Code.

 Appellant complains that "nowhere were they (the jury) advised that they could return a verdict in favor of both the plaintiff and the defendant, Los Angeles Railway Corporation, and against the defendant Lytle". But we find that seven forms of verdict were given to the jury. In the event they had returned forms of verdict Nos. 3, 4 and 5 the effect would have been a verdict in favor of plaintiff and defendant Los Angeles Railway Corporation and against the defendants Lytle.

*Did the Trial Court Err in Its Instructions to the Jury?*

 Appellant next assigns as reversible error the giving of certain instructions requested by plaintiff and the refusal to give, except as modified, certain instructions requested by defendant; likewise that certain instructions were inconsistent and in conflict with other instructions given at the request of both plaintiff and defendant L. A. Railway Corporation.

We have examined with much care the entire charge to the jury and find it to be full and comprehensive on every issue litigated in the case and a correct exposition of the law applicable to the evidence introduced; nor do we find any of the instructions given to be inconsistent with or in conflict with others so given.

Judgment is affirmed.

Stephens, P. J., and Desmond, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 27, 1934.