[Civ. No. 7843.   First Appellate District, Division Two.—August 24, 1931.]

NETTIE SHANNON, Appellant, v. HERBERT FLEISHHACKER et al., Respondents.

Everette C. McKeage for Appellant.

Humphrey, Searls, Doyle & MacMillan for Respondents.

NOURSE, P. J.—Plaintiff sued for damages for the death of her minor son who was employed in the playfield of the Golden Gate Park operated by the city and county of San Francisco. The defendants are the park commissioners, the park superintendent, the superintendent of playgrounds and the manager of the "Fleishhacker Playfield". The cause was tried with a jury. At the close of plaintiff's case the trial judge granted defendants' motion for a nonsuit. The appeal is presented on typewritten transcripts.

The deceased was a boy of fifteen years, who was employed on Saturdays and holidays in and about the "Fleishhacker Playfield". On May 19, 1929, he was assigned to take tickets at the "Ferris Wheel" operated in said playfield and to start and stop the machine and to open and close the gates to permit the children to enter and leave the cars or carriages on the wheel. The machine was started and stopped by a lever located at the entrance gate where deceased was stationed. The operating machinery was inclosed in a shed on the opposite side of the wheel from the entrance gate and this shed, as well as the wheel, was surrounded by a high wire fence. A man by the name of Hancock had direct charge of the operation of the machine with the special duty of oiling and greasing its parts and of performing such mechanical work as became necessary. The deceased was frequently instructed not to enter the inclosure where the machinery was housed and not to attempt to oil, grease or repair any of its parts. On the day of his death he asked defendant Brandon for a rag, saying he wanted to tighten a grease cup. He was told to leave the grease cup alone and to report to Hancock. He asked Hancock for a rag and Hancock told him to leave the grease cup alone and that he (Hancock) would attend to it. Shannon disregarded these instructions, entered the fenced inclosure, and climbed around behind the wheel while it was in motion. He was struck on the back of the head by some portion of the wheel and died soon after.

In the final analysis appellant bases her cause of action upon the theory that all the defendants were guilty of negligence *per se* because the deceased minor was employed in violation of the Child Labor Law and the Compulsory School Attendance Law. The appeal is argued on the theory that if a violation of either of these statutes is shown a case of negligence *per se* is made which should have gone to the jury. However, we are not satisfied that the decision should rest upon this ground. By the act of June 13, 1923 (Stats. 1923, p. 675; Deering's Gen. Laws, 1923, Act No. 5619), the legislature changed the entire policy of the state in regard to actions for injuries sustained upon public property. This act made counties, municipalities and school districts liable for the negligence of their officers in certain instances and prescribed the method for enforcing such liability. Prior to this act no action would lie against a municipality for injuries suffered in connection with the operation of a municipal playground. (*Kellar* v. *City of Los Angeles,* 179 Cal. 605, 607 [178 Pac. 505].) Theretofore, by the act of May 18, 1919 (Stats. 1919, p. 756; Deering's Gen. Laws, 1923, Act No. 5618), the legislature declared the conditions under which public officers, as distinguished from the public corporation, were liable for such injuries. The pertinent provisions of this act are that "No officer of any district, town, city . . . shall be liable for any damages or injury to any person . . . resulting from the defective or dangerous condition of any public street . . . or property, unless it shall first appear: (1) That the injury sustained was the direct and proximate result of such defective or dangerous condition, (2) that such officer had notice of such defective or dangerous condition, (3) . . . (4) . . . and then *only when it shall further appear* that such damage or injury was sustained while such public . . . building, work or property *was being carefully used,* and that *due care was being exercised* to avoid the danger. . . . '' The act was declared not to be an enlargement of the duty or liability of any public officer.

Having elected to sue the officers rather than the municipal corporation it was incumbent upon appellant to bring her complaint within the terms of the statute which imposed a liability upon those officers. Three acts of negligence were specified in her complaint—the violation of the

two employment statutes and negligence in the maintenance of the grounds which was stated in the following language: That the respondents "negligently maintained said ferris wheel and carelessly and negligently permitted said ferris wheel to be operated, due to the fact that said ferris wheel was not equipped with, at the time of its installation or afterwards or at all, a guard to protect persons from coming in contact with the revolving lower part of said ferris wheel". Two essential elements of the statute are lacking: respondents' knowledge of the alleged defective condition of the property, and the exercise of due care on the part of deceased. In the recent case of *Gorman* v. *County of Sacramento*, 92 Cal. App. 656, 668 [268 Pac. 1083, 1088], the District Court of Appeal say, in reference to this statute: "An examination of the 1919 act shows that a person suing. an officer for negligence has not only to plead, but also to prove, that the injury and damage complained of was sustained while such public street . . . or property was being carefully used and that due care was being exercised to avoid damage due to such condition; or, in other words, this act changes the general rule that the burden of showing contributory negligence is upon the defendant, and requires an affirmative showing on the part of the plaintiff that he was using the road, bridge, or street with due care."

The "Pridham Act" (Stats. 1911, p. 1115) contained the same language and was given the same interpretation in *Ham* v. *County of Los Angeles*, 46 Cal. App. 148, 160 [189 Pac. 462], as is found in the Gorman case. And to the same effect is *McCain* v. *City of Oakland*, 52 Cal. App. 639, 642 [199 Pac. 841]. The 1911 statute was held unconstitutional upon other grounds in *Brunson* v. *City of Santa Monica*, 27 Cal. App. 89 [148 Pac. 950]. The 1919 statute was enacted to cure this constitutional defect and expressly repealed the 1911 statute. In *Moore* v. *Burton*, 75 Cal. App. 395, 402 [242 Pac. 902, 905], the District Court of Appeal, after quoting with approval the language of the Ham opinion upon this phase of the case, say: "This provision having been substantially reenacted by the repealing act, and having been construed as above, the same construction may reasonably, and on the authority of the case cited should be, given to the later statute."

In the three cases cited—the Ham case, the Burton case and the Gorman case—petitions for hearing were denied by the Supreme Court, and, finding no authority to the contrary, we may take them as stating the controlling rule of law in proceedings of this character. As the statute expressly declares that it is not to be construed as enlarging the duty or liability of any public officer, we must construe it as a limitation upon liability of such officers for injuries incurred under the circumstances therein enumerated. And this construction becomes the more sound since the enactment of Act No. 5619 in 1923 which for the first time imposed a liability upon the public corporation for such injuries and which so closely follows the 1919 act in its language as to indicate that the legislature had that act before it when the later one was enacted. These two acts should, therefore, be read together as stating the statutory rule of procedure for the enforcement of liability for injuries incurred under the circumstances therein mentioned, so that, if the injured party seeks recovery against the public corporation, he must proceed under the 1923 act, and, if he seeks to hold the public officers to their personal liability, he must proceed under the 1919 act (except in the limited cases mentioned in section one of the Act of 1923). The appellant having failed to plead or prove that the deceased was using the "property" with due care she has utterly failed to make a case to go to the jury.

The only answer suggested to the foregoing is that, under the rule of *Smellie* v. *Southern Pac. Co.*, 212 Cal. 540 [299 Pac. 529], the law presumes that the deceased exercised due care for his safety and hence any evidence of negligence on his part would merely create a conflict which should go to the jury. These considerations were before the court in the Ham case where it was said that to so hold "is to offset by a legal presumption the declaration of the statute that the burden is on the plaintiff in such cases to show that due care was used by him". (Page 161 of 46 Cal. App.) To this it might be added that to so hold is to render that portion of the statute nugatory because, if the plaintiff can rely upon that presumption alone there would be no need of his pleading or proving due care. The proper rule, as we understand the decisions, is that this presumption, which is available to the plaintiff generally, is not

sufficient, in actions brought under this statute, to satisfy the demand that the plaintiff must plead and prove the exercise of due care in the use of the public property causing the injury.

There is a justifiable reason for this distinction. Public property is open to the use of the public generally; and the general use of such property is a constant source of danger to the public. To encourage the exercise of due care in the use of public property, the legislature might well limit the public liability to those who exercise such care. And, as the state and its political subdivisions and officials may not be sued for damages in such cases without the consent of the state, the legislature may properly impose such reasonable restrictions upon actions of this character.

■ There is another point of difficulty which, like the foregoing, has not been discussed in the briefs, but which effectively stops the case in so far as the respondents, the park commissioners, are concerned. The park commissioners were all officers and agents of the city and county of San Francisco, a public corporation. The park superintendent, his assistant, and the manager of the playfield were all sub-agents employed in the service of the common principal. As original agents the park commissioners are not liable to a third person for the negligence of their subagents, or coservants. Section 2351 of the Civil Code provides: ". . . the original agent is not responsible to third persons for the acts of the sub-agents". In *Hilton* v. *Oliver*, 204 Cal. 535, 539 [61 A. L. R. 297, 269 Pac. 425, 426], the Supreme Court, having this question before it, say: "The rule laid down or approved by the decisions in this state is that an agent is not in general liable to third persons for the misfeasance or malfeasance of a sub-agent employed by him in the service of his principal, unless she is guilty of negligence in the appointment of such sub-agent or directs or authorizes the particular wrongful act of the sub-agent or improperly co-operates in the latter's acts or omissions. (*Dobbins* v. *City of Arcadia*, 44 Cal. App. 181 [186 Pac. 190]; *Baisley* v. *Henry*, 55 Cal. App. 760 [204 Pac. 399].) The defendant trustees can be held liable under the facts shown herein only by reason of the application of the doctrine of *respondeat superior*. This doctrine has no applica-

tion as between a public officer and his subordinates who are likewise in the public service, unless the public officer has directed or countenanced the tortious acts to be done or has co-operated therein. (*Michel* v. *Smith*, 188 Cal. 199 [205 Pac. 113]; *Whiteman* v. *Anderson-Cottonwood Irr. Dist.*, 60 Cal. App. 234 [212 Pac. 706].)'' This general principle is recognized in Act No. 5619, where it is provided that supervisors, city trustees and school trustees are not liable for the negligence of any appointee or employee unless they knew that such appointee or employee was inefficient and incompetent to perform the services delegated to such.

In so far as the respondents the park superintendent and the superintendent of playgrounds are concerned, there is neither pleading nor proof that they had any power or duty to appoint the manager of the playfield, or to employ the deceased, or that they had any knowledge of his employment, or of the alleged defective condition of the ferris wheel. The allegation is that the deceased was employed by Brandon as manager of the playfield. But Brandon was also an employee, or agent, of the public corporation, and, as such, a coservant of these other respondents. Though he may not have been a "sub-agent" of the park superintendent or of his assistant within the terms of section 2351 of the Civil Code, he was their subordinate, or "co-agent". It would seem, therefore, that the same rule would apply to these respondents as was applied in *Michel* v. *Smith*, 188 Cal. 199, 201 [205 Pac. 113, 114], where the Supreme Court held that a sergeant of police was not responsible for the negligence of a member of his squad, saying: "A public officer is not responsible for the acts or omissions of subordinates properly employed by or under him, if such subordinates are not in his private service, but are themselves servants of the government, unless he has directed such acts to be done or has personally co-operated therein. (23 Am. & Eng. Ency. of Law, 382; Story on Agency, sec. 319; *Robertson* v. *Sichel*, 127 U. S. 507–515 [32 L. Ed. 203, 8 Sup. Ct. Rep. 1286; see, also, Rose's U. S. Notes].)'' Similar holdings have been made in relation to special police officers employed by private persons in *Redgate* v. *Southern Pac. Co.*, 24 Cal. App. 573, 581 [141 Pac. 1191], and *Maggi* v. *Pompa*, 105 Cal. App. 496, 499 [287 Pac. 982]. There is here neither allegation nor proof that

any of the other respondents directed Brandon to perform any of the acts complained of or that they "personally cooperated therein".

In the instant case the failure to plead the exercise of due care might have been excused if the appellant had made proof of that fact; but her proof is all one way—that the machinery was properly safeguarded and that the injury was caused solely by the disobedience by the deceased of the direct orders of his superiors. In this respect the case is analogous to *Scott* v. *City of Long Beach*, 109 Cal. App. 254 [292 Pac. 664], a suit directly against the corporation under the statute of 1923. The District Court of Appeal affirmed a judgment for defendant, notwithstanding the jury's verdict for plaintiff, holding that plaintiff had not made a case of negligence within the terms of the statute.

For the reasons given the appellant wholly failed to make a case against any of the respondents, other than Brandon, as public officials or in their private capacities and, as to all those respondents, the nonsuit was properly granted.

As to the respondent Brandon the allegation of the complaint being that he employed deceased in violation of the Child Labor Law and the Compulsory Education Law a consideration of those acts becomes necessary. █ The provisions of the Child Labor Law (Deering's Gen. Laws, 1923, Act No. 3625; Stats. 1919, p. 415) upon which reliance is placed prohibit the employment of any minor under the age of sixteen years "in or in connection with any . . . place of amusement . . . " (section 1) except as may be provided by the provisions of "the compulsory school attendance law". Section 4 of the act provides that "No minor under the age of sixteen years shall be employed, permitted or suffered to work . . . oiling, wiping or cleaning machinery . . . or in proximity to any hazardous or unguarded belts, machinery or gearing, . . . or in any other occupation dangerous to the life or limb, or injurious to the health or morals of such child." This section lists twenty-four different kinds of machines and nineteen separate places of employment where such minors may not be employed and authorizes the bureau of labor statistics to list other places of employment which should be prohibited. Neither the machine nor the place of employment where the deceased met his death is banned by any of these specific regulations.

All the evidence, without any shade of conflict, is that the deceased was engaged to perform a safe and nonhazardous duty in connection with a machine that was protected by every known safeguard. He was not *employed* to oil or clean any machinery and was not employed in proximity to any *unguarded* machinery or in any occupation dangerous to life, limb, health or morals. Thus it is apparent that appellant was not employed in violation of this statute in so far as the machine he was hired to operate is concerned, first because the ferris wheel is not a machine listed in any of the regulations and second because this machine was not "unguarded machinery", which is the only general regulation found in the act. All the evidence demonstrates that the wheel was guarded by every known safeguard and that the minor was explicitly directed not to go behind those guards. The exhibits which have been brought up with the transcript plainly show that if deceased had followed these instructions and had remained where he was employed to remain there could have been no possible chance for an injury. Negligence cannot therefore be predicated upon the mere employment of the minor to work the harmless lever of the machine and to take the tickets from the customers. As this was all he was employed to do the fact that he disobeyed instructions and went over the guard to a place of danger has no relation to any liability of the respondents under the labor statute. To hold that a minor may not be employed in a place of safety because perchance he might disobey orders and wander into a place of danger would make the labor law ridiculous.

In so far as the statute relates to the *place* of employment, it is true that such minors may not be employed in any "place of amusement" without a permit from the school authorities as required by the Compulsory School Attendance Law. If it is negligence *per se* to employ a minor in such a place of employment without a working permit then appellant has a case. Otherwise not.

█ This brings us to a discussion of the second point— the effect of the failure of the deceased to present a certificate to work from the school authorities. The Compulsory Education Law upon which appellant relies is the act of March 24, 1903 (Stats. 1903, p. 388; Deering's Gen. Laws, 1923, Act No. 7487). Though this act was repealed by the

School Code adopted in 1929 (p. 303) and its main provisions were incorporated in that code, the repealing act did not become effective until after this cause of action arose. The pertinent provisions of this act required a minor under the age of sixteen years to procure a permit from the proper school authorities permitting him to work and required the employer to ask for and retain the permits so issued to such minors in his employ. It provided that no one should "suffer or permit" a minor to be employed in violation of the terms of the act, and it would thus seem to apply to an agent of the employer such as the respondent Brandon. The act prescribed certain regulations to be followed in the issuing of such permits within the discretion of the school authorities and these were followed with specifications for the issuance of "vacation permits" which also authorized the minor to work on the regular weekly school holiday. The issuance of such "vacation permits" appears to be mandatory.

Here it is conceded that the deceased minor did not deliver to the respondents a permit to work. For this reason the appellant insists that she has a case of negligence *per se*. The respondents argue that there is no causal connection between the fact of the absence of the permit and the injuries sustained by the minor. This should also be conceded because it is self-evident. The rule of law aplicable is succinctly stated in *Arrelano* v. *Jorgensen,* 52 Cal. App. 622, 624 [199 Pac. 855, 856], where the District Court say: "but it is well settled that the act or omission constituting the violation of law must have contributed directly to the injury, or, however improper or illegal it may have been in the abstract, no action for damages can be found upon it". In *Williams* v. *Southern Pac. Co.*, 173 Cal. 525, 549 [160 Pac. 660, 666], the Supreme Court had a case of damages for the death of a minor employed by it under a contract which violated some terms of the Child Labor Law. But the violation of the act did not contribute to the injuries of the employee, and the court say: "So far as that particular accident is concerned, notwithstanding his violation of the statutory duty, the employer was not only not guilty of any negligence *per se*, but he was not guilty of any negligence at all," and, on page 541 of 173 Cal., the court say further: "But this connection (the violation

of the statute) is not the causal connection—the contributing cause—which the law declares. So fundamentally true is this, that even in statutes like this, where the hours of labor are limited by law, it must be shown not only that the employee was laboring during the forbidden or excessive hours, but that his injuries in some proximate way resulted from this fact."

Similar holdings have been made in reference to violations of the California Vehicle Act—that they must have proximately contributed to the injury complained of to be actionable. (*Ormston* v. *Lane,* 90 Cal. App. 481, 487 [266 Pac. 304]; *Berges* v. *Guthrie,* 51 Cal. App. 547, 549 [197 Pac. 356]; *Skaggs* v. *Wiley,* 108 Cal. App. 429 [292 Pac. 132]; *Burtt* v. *Bank of California Nat. Assn.,* 211 Cal. 548 [296 Pac. 68].) We need not go into the niceties of the decisions which question whether in every case the violation of a penal statute constitutes negligence *per se,* but may accept the principle stated in *Inland Steel Co.* v. *Yedinak,* 172 Ind. 423 [139 Am. St. Rep. 389, 87 N. E. 229, 232], where the court, assuming that it was negligence *per se,* said: "But to make such negligence actionable it must be a proximate cause of the injury for which the action is brought."

We have purposely confined the foregoing discussion to the two theories upon which appellant sought to recover—the alleged violation of the Child Labor Law, and the alleged violation of the Compulsory Education Law. We have shown that she failed to prove a violation of the Labor Law and that she failed to prove that the admitted violation of the Compulsory Education Law was a contributing cause of the injuries. We have not overlooked any of the many assignments of error on the exclusion of evidence. ■ There was no controversy but that the ferris wheel as a whole was a dangerous piece of machinery within the meaning of the Child Labor Law, but all the evidence educed by the appellant demonstrated that the place where the deceased was employed was free from danger and that the injury arose solely from his disobedience of orders in going into a place where he was *not* employed. Hence, the appellant was not prejudiced by the exclusion of additional evidence offered to show the dangerous character of this machinery. Having failed to show a causal connection between the absence of a working certificate and the injuries

complained of she was not injured by the exclusion of the proffered evidence tending to show that other minors had been employed in the park system and that some of the respondents had knowledge of that fact. ■ The criticism of the trial judge in refusing to dismiss the jury while the motion for nonsuit was argued falls with the granting of that motion. The same may be said of the complaint that appellant was not permitted to argue that motion fully. She has had full opportunity to argue it here, and if we are correct in our conclusions, further argument in the trial court could not have availed appellant.

Judgment affirmed.

Sturtevant, J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on September 23, 1931, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on October 23, 1931, and the following opinion then rendered thereon:

THE COURT.—In denying a hearing in this case, we withhold our approval of that part of the opinion which deals with the meaning and effect of the Child Labor Law (Deering's General Laws, 1923, Act 3625) and of the Compulsory Education Law (Deering's General Laws, 1923, Act 7487).