[Civ. No. 196. Fourth Appellate District.—November 13, 1931.]

JENNIE BLODGET, as Administratrix, etc., Respondent, v. DON C. PRESTON et al., Appellants.

Swing & Wilson and Fred A. Wilson for Appellants.

George H. Johnson for Respondent.

BARNARD, P. J.—This action was brought by the plaintiff as administratrix, to recover for the death of her husband, D. Newton Blodget, which resulted from an automobile accident which occurred between 9 and 10 o'clock on the morning of March 26, 1929. At that time the defendant May, who was an employee of the defendant Preston, was driving a Ford truck north on Arrowhead Avenue in the city of San Bernardino. Some 40 or 50 feet north of the intersection of this street with Twenty-first Street, the truck driven by May ran into Blodget, at a point about five feet from the east curb of Arrowhead Avenue. At the time he was struck, Blodget was pushing a lawn mower and had certain garden tools over his shoulder. There was evidence that after he was struck, Blodget was carried on the fender of the car to a point about 140 feet from the point of impact, in a northwesterly direction, to approximately the center of Arrowhead Avenue where the automobile stopped and Blodget dropped to the pavement. At the conclusion of the evidence the court granted a motion for a directed verdict and instructed the jury to bring in a verdict in favor of the defendants, which the jury did. This appeal is from an order granting a new trial.

In its order granting a new trial, the court stated that the motion "is granted upon the ground that the court erred in withdrawing the case from the jury". While the court did not specify the insufficiency of the evidence as one

of the reasons for granting a new trial, and while the question of whether·the instruction referred to was or was not erroneous, is a question of law, its solution depends upon the circumstances in the case and requires an examination of the evidence. (*Montgomery* v. *Globe Grain & Milling Co.*, 109 Cal. App. 695 [293 Pac. 856].) The question presented is whether the instruction for a directed verdict should have been given under the circumstances disclosed by the evidence. ▆▆ Appellants contend that the instruction was correct for the following reasons: First, there was no substantial evidence of appellant's negligence; second, the uncontradicted evidence establishes that the decedent was guilty of contributory negligence as a matter of law. We will take up these points in the order named.

The appellant May testified that he was driving the truck in question north on Arrowhead Avenue at the time of the accident; that as he arrived some 40 or 50 feet north of the intersection of this street with Twenty-first Street, he was driving at about 20 miles an hour, about five feet from the east curb of Arrowhead Avenue; that the deceased, when he first saw him, was about five feet in front of his truck and also about five feet from the east curb of Arrowhead Avenue; and that he did not see where the deceased came from. He testified as follows: "Q. Where did Mr. Blodget come from? A. I don't know. Q. You didn't see him at all? A. I didn't see where he came from; he was just there." He also testified that he had his eyes on the road in front of him; that he was not looking for a house number; that he had not told anyone he was looking for a house number; that the deceased was pushing a lawn mower and carrying a lawn trimmer and spade across his shoulder; that the deceased was walking in a northwesterly direction and with his back toward the witness; that he applied his brakes as soon as he saw Blodget and swerved to the right attempting to pass between him and the curb; that he struck Blodget with his left-hand fender; that he did not hear the lawn mower and that his truck was quite a noisy Ford; that there was no other traffic coming in either direction; that his brakes were in fair condition; and that he did not have time to sound his horn. He also testified: "I was not looking for him in particular; I was looking ahead of me; I didn't expect to find him there." "Q. Now, then,

what was Mr. Blodget doing when you first saw him? A. Mr. Blodget was walking in a northwesterly direction with his back to me; he did not see me. Q. Was he walking? A. Yes, sir. Q. How many steps did he take? A. I couldn't account for the steps; I could say he was in motion. Q. He was in motion? A. Yes, sir. Q. How far would you say this lawn mower was in front of him that he was shoving? A. Oh, about 2 or 3 feet. Q. That is on the pavement in front of him? A. Yes, sir. Q. You could see the mower, could you? A. Yes, sir." . . . "Q. How fast was he moving when he was walking? A. Well, the usual gait I guess—just about—he didn't move very far after I saw him; it happened so quick I don't believe he had a chance to make another step. Q. You think from the time you first saw him until you struck him he did not take another step? A. He did not—he had not made a full step—just about. Q. He had his back to you so that you could not see any part of his face? A. Yes, sir."

It is undisputed that this accident happened in broad daylight on a straight street where there were no obstructions, and that there was no other traffic at the time. There is no evidence as to when or where the deceased entered the street. When the driver of the truck first saw him he was five feet from the east curb of the street, with a lawn mower in front of him and certain implements over his shoulder. If the appellant's theory is correct, that the deceased had just come from the curb and was proceeding diagonally across the street, a somewhat different situation is presented from the ordinary case where a pedestrian suddenly steps into the street in front of an oncoming vehicle. While the time necessary for an ordinary person to proceed five feet from the curb would be very short, it would take considerably longer for a man sixty-nine years old to cover that distance while pushing a lawn mower and carrying the other tools referred to, with the necessity of lowering the lawn mower over the curb before he began to push it ahead. It does not seem reasonable that the driver of the truck, if he was looking ahead, could have failed to see this performance in time to have avoided the accident, especially when a slight swerve to the left would have been sufficient and the rest of the roadway was clear. The driver admits that he did not see the deceased come

from the curb, or from anywhere, but says he was "just there". If the deceased was standing still he would have been visible before the truck got within five feet of him, and it is equally certain that if he was walking for a few feet before he reached the spot where he was first seen by the driver, he was not invisible during that time. It would reasonably appear that the appellant May was either not looking or if he was looking, that he must have seen the decedent and then failed to sound his horn or take any other precaution to avoid the collision. The driver testified that his brakes were in "fair" condition. At that time the Motor Vehicle Act provided that it was unlawful to operate a car which could not be brought to a complete stop within 37 feet when traveling at 20 miles an hour. (Stats. 1923, p. 545, sec. 94; Stats. 1929, p. 530, sec. 36.) A car traveling 20 miles an hour would cover 37 feet in less time than it would take for a man to lower a lawn mower from a curb and push it five feet. In view of the facts, including the distance the deceased was carried, the inference is possible that the driver of the automobile saw the deceased but was unable to stop in time because of the condition of his brakes. In any view of the evidence we think there was sufficient substantial evidence of negligence on the part of the driver of the truck to require the submission of that question to the jury. (*Hoy* v. *Tornich*, 199 Cal. 545 [250 Pac. 565].)

█ The remaining question is whether the evidence shows the decedent to have been guilty of contributory negligence as a matter of law. There is absolutely no evidence as to any precaution or lack of precaution on the part of the decedent before he entered the highway. There is no evidence as to when or where the decedent left the curb. He may have left the curb a little farther back, he may have looked before he did so, the weight of the lawn mower going off the curb may have pulled him into the street faster than he intended or desired, he may have looked just before the driver saw him and may even have been trying to get back to the curb, as the driver testified he was not able to see even the side of his face but that his back was directly toward him. He may have seen the truck approaching some distance away and traveled close to the curb in the belief that the driver of the automobile would con-

tinue in the usual course of travel, near the center of the road, and that this would be a safe course of procedure in the absence of all other traffic, the paved portion of the street being 54.5 feet in width. Such a course and such a belief would have been more or less reasonable under the circumstances, and we think that it is not true that an inference of negligence on his part must certainly be drawn from the meager facts shown in the record as to what the deceased did. How or when the decedent got into the street and what he did is entirely a matter of speculation, and under the circumstances shown by the evidence, with the ample opportunity the driver apparently had to avoid the accident, we think it may not be said that reasonable men could not differ upon the question whether the deceased was guilty of negligence, and upon the further question whether such negligence, if any, was a proximate cause of the accident.

The appellants introduced in evidence an ordinance of the city of San Bernardino which prohibits a pedestrian from crossing a highway outside of the central traffic district, except at right angles to the curb, and provides that when so crossing he must yield the right of way to all vehicles. It is earnestly insisted that the deceased was violating this ordinance and that this fact alone constituted contributory negligence, as a matter of law. Assuming that the deceased was violating this ordinance, which fact itself appears only from inference and not from any direct evidence, since no one saw him leave the curb, no one saw him take more than one step, and his position at the time he was first seen by the driver of the truck may have been due to his effort to get out of the way, this fact alone does not show such contributory negligence as will prevent a recovery. To establish such contributory negligence it must not only appear that the ordinance was violated but that the violation thereof was a proximate cause of the injuries received. (*Thomas* v. *General Benevolent Soc.*, 168 Cal. 183 [141 Pac. 1186]; *Skaggs* v. *Wiley*, 108 Cal. App. 429 [292 Pac. 132].) When the appellant May first saw the deceased, he was five feet from the curb line. As far as the appellant is concerned, it would make no difference whether the deceased arrived at that point by coming at right angles from the curb, or coming more diagonally. So far as the question we are considering is concerned the important consideration

is not how the deceased arrived at the point where he was struck, but whether he looked and took such precaution for his own safety as was reasonable. Even if he violated the ordinance this may not have been a proximate cause of his injury. We are asked to presume that the deceased did not look, and that he exercised no care for his own safety. On the other hand, a person is presumed to take ordinary care for his own safety. (Sec. 1963, Code Civ. Proc.) This presumption is itself evidence and may even be sufficient to outweigh positive evidence to the contrary. (*Smellie* v. *Southern Pac. Co.,* 212 Cal. 540 [299 Pac. 529]; *Rogers* v. *Interstate Transit Co.,* 212 Cal. 36 [297 Pac. 884].) Assuming that the deceased violated this ordinance, we think that the question as to whether or not his violation thereof was a proximate cause of his injury was a question for the jury. (*Coakley* v. *Ajuria,* 209 Cal. 745 [290 Pac. 33].)

The appellants cite and rely upon such cases as *Moss* v. *H. R. Boynton Co.,* 44 Cal. App. 474 [186 Pac. 631]; *Finkle* v. *Tait,* 55 Cal. App. 425 [203 Pac. 1031]; *Burgesser* v. *Bullock's,* 190 Cal. 673 [214 Pac. 649]; *Ogden* v. *Lee,* 61 Cal. App. 493 [215 Pac. 122]; *Atkins* v. *Bouchet,* 65 Cal. App. 94 [223 Pac. 87]; *Lord* v. *Stacy,* 68 Cal. App. 517 [229 Pac. 874]; *Bence* v. *Teddy's Taxi,* 101 Cal. App. 748 [282 Pac. 392, 283 Pac. 86]. In all of these cases there was sufficient evidence to show that the injured party either walked into the street when his view was so obstructed that he could not see, or without looking, stepped from a place of safety into the path of oncoming traffic. Under the circumstances shown by this record we think these cases are not controlling, and that under the facts before us, with the reasonable inferences therefrom, and the presumption provided by law, the question of contributory negligence on the part of the deceased was one of fact for the jury and not one of law.

We conclude, therefore, that the instruction directing the jury to bring in a verdict for the appellants should not have been given, and that the order granting a new trial was properly made.

The order appealed from is affirmed.

Marks, J., and Jennings, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 7, 1931, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 11, 1932.