[Civ. No. 1214.   Fourth Appellate District.—July 10, 1933.]

LOTTA L. KELLNER et al., Respondents, v. AUGUST WITTE et al., Appellants.

Ray W. Hays for Appellants.

Willebrandt, Horowitz & McCloskey for Respondents.

MARKS, J.—Lotta L. Kellner is the widow and Jessica R. Kellner is the daughter of Louis Kellner, deceased. They brought this action to recover damages for his death which resulted from a collision between an automobile which he was driving in a southerly direction on the state highway and a truck belonging to the appellant August Witte and driven by his employee, Joseph J. Seale, in a northerly direction on this highway. The accident occurred about 18 miles north of the city of Bakersfield. The highway rises on a slight grade for several hundred feet northerly from the point of impact. At that place the paved portion of the road was 30 feet in width with a dirt shoulder on each side.

The accident happened about 4 o'clock on the afternoon of August 25, 1931. The day was clear. J. A. Root was driving northerly on the highway with his wife and daughter in a coupe at a speed of between 25 and 30 miles an hour. His left wheels were about four feet easterly from the center

line of the highway. The truck, driven by Seale, gradually overtook the Root automobile and tried to pass. It could not make a speed in excess of 35 miles an hour. During his attempt to pass the Root automobile the Kellner car and the truck came into collision.

Appellants rely on two grounds for a reversal° of the judgment. First, that Kellner was guilty of contributory negligence; and second, that the trial court erroneously overruled their objections and admitted in evidence statements of Seale as to how the accident occurred, without instructing the jury that the statements could not be considered as evidence against Witte, who was not present when they were made.

They rest their claim of contributory negligence on the part of Kellner upon three grounds: First, that he was driving at a high rate of speed and in excess of 45 miles per hour; second, that he was driving near the center line of the road and not near his right-hand edge of the highway; and third, that he did not maintain a lookout for obstructions ahead.

As is usual in cases of this kind, the evidence and reasonable inferences to be drawn from it are conflicting. There is ample evidence in the record to sustain the conclusion that Kellner was guilty of negligence which directly and proximately contributed to his injury and death, had the jury so found in reaching its verdict. However, as the jury reached a contrary conclusion, it is only necessary for us to determine whether there is any evidence to support its implied finding that the negligence of Kellner did not contribute to the accident and his subsequent death. In discussing this phase of the case we will only summarize such evidence as tends to support this finding of the jury.

We have studied the record and are satisfied that it must be conceded that Kellner was driving his automobile considerably in excess of 45 miles per hour at the time of the accident and on his right-hand side of the road with his left wheels about two feet to his right of the center line of the highway until he reached a point between 25 and 50 feet from the place of impact. The evidence would justify the conclusion that during this last distance he swerved to his right in an effort to avoid the collision. When the truck and automobile came to rest after the col-

lision the right-hand wheels of the automobile were on the dirt shoulder of the highway westerly from the pavement. The truck was headed in a northwesterly direction with its left rear wheel at about the center line of the pavement. Its left front wheel was on top of the Kellner car in front of the driver's seat and about two feet easterly from the westerly edge of the pavement. The truck was about 22 feet in length and had a bed a little over seven feet in width.

It is well settled in California that violation of a statute is negligence *per se*. However, since the addition of subdivision d to section 113 of the California Vehicle Act (Stats. 1931, p. 2121) speeds in excess of those prescribed in subdivision b of the same section may not be considered negligence as a matter of law, but "the burden shall be upon the opposing party to establish that the operation of such vehicle at such speed constituted negligence". Before the adoption of this subdivision it was held that the question of whether excessive speed amounting to negligence *per se* on the part of the driver of an automobile contributed to his injury was a question of fact to be decided by the jury in the ordinary accident case. (*Skaggs* v. *Wiley*, 108 Cal. App. 429 [292 Pac. 132]; *Hepner* v. *Libby, McNeill & Libby*, 114 Cal. App. 747 [300 Pac. 830]; *Shannon* v. *Fleishhacker*, 116 Cal. App. 258 [2 Pac. (2d) 835]; *Blodget* v. *Preston*, 118 Cal. App. 297 [5 Pac. (2d) 25]; *Morehead* v. *Roehm*, 118 Cal. App. 312 [4 Pac. (2d) 995]; *Klemko* v. *Ryer*, 118 Cal. App. 238 [4 Pac. (2d) 998].)

Subdivision b of section 122 of the California Vehicle Act provides that, under ordinary circumstances, the operator of a motor vehicle shall drive it as closely as practicable to his right-hand edge of the highway. Whether a failure to observe this provision is negligence that *contributed* to the injury of a driver in an ordinary accident case has been held to be a question of fact to be decided by the jury. (*McLellan* v. *Cocola*, (*ante*, p. 9 [24 Pac. (2d) 200]; *Gayton* v. *Pacific Fruit Express Co.*, 127 Cal. App. 50 [15 Pac. (2d) 217].)

There is ample evidence in the record supporting the contention of appellants that had the deceased maintained a lookout he would have seen the truck in his path and could have avoided the accident by reducing his speed and swerving his automobile to his right. However,

the rule is well settled in this state that where there is any substantial evidence sustaining an implied finding of a jury it will not be disturbed on appeal even though it seems to the appellate court that a preponderance of the evidence would support the opposite conclusion. There is evidence in the record which would support the conclusion that Seale turned his truck sharply to his left and onto his left-hand side of the center of the pavement and into the path of the Kellner car when it was within a distance of from 150 to 200 feet from him. J. A. Root testified that just before the collision another automobile passed the Kellner car several hundred yards to the north of the place of the impact. He further testified as follows: ''Q. Where was this truck when the first car passed you, how far behind you? A. He was right back at me. Q. He was right back of you when the first car passed you? A. Yes, sir. I should think that this man pulled out around him, he started to go around me and this car missed him. Q. You mean the truck had already pulled around you? A. I hadn't seen him. Q. You don't know where the truck was when the first car passed you? A. No. Q. Except that it was close behind you? A. Yes, the truck was. Q. Well, this is the picture. At the time the first car passed you or even with you, that the truck driven by Mr. Seale was right behind you and the car driven by Mr. Kellner was fifty or sixty yards to the north, that is right? A. Yes, sir. Coming down towards me. Q. Were you watching this truck at all when it pulled around you? A. Yes, sir.''

From this evidence and from the other evidence indicating the positions of the two vehicles when they came to rest after the collision we must conclude that the jury was of the opinion that when Kellner was less than 200 feet from the Root car, Seale turned the truck sharply to his left to pass the Root automobile, and onto his left side of the road and into the path of deceased's automobile, and that this was the proximate cause of the accident and the death of Kellner. There being evidence to support this conclusion we cannot disturb it on appeal.

█ Seale was not present in the court below during the time respondents were putting on their case in chief. They desired to call him for cross-examination under section 2055 of the Code of Civil Procedure, but were not able to

do so. He had appeared as a witness at the coroner's inquest. Over the objection of appellant Witte that the evidence could not bind him, respondents were permitted to introduce in evidence statements made by Seale while a witness at the inquest. This ruling of the trial court was error. ▐ It is well settled that statements made by an employee not in the presence of his employer and which are not part of the *res gestae* are not admissible in evidence against the employer though admissible against the employee as declarations against his interest. However, under the facts here presented we do not consider this error sufficiently prejudicial to require a reversal of the judgment. Seale subsequently appeared as a witness and was cross-examined by respondents. Practically the same portions of the transcript of the coroner's inquest were used to impeach his testimony that had been referred to in the testimony introduced by respondents in chief. No objection was made by Witte to the use of the transcript on cross-examination nor did he request an instruction that the statements of Seale could not be considered as binding upon him when made out of his presence and not a part of the *res gestae*. We have concluded this cured the former error.

Judgment affirmed.

Barnard, P. J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 6, 1933.