[Civ. No. 1286. Fourth Appellate District.—May 28, 1934.]

SETSUKO NITTA et al., Respondents, v. D. W. HASLAM et al., Appellants.

Ray W. Hays, Everts, Ewing, Wild & Everts, Redman, Alexander & Bacon and Herbert Chamberlain for Appellants.

Harris & Hayhurst and Rue C. Gibson for Respondents.

MARKS, J.—This is an appeal from a judgment in favor of plaintiffs in the sum of $20,505 for damages resulting from the death of Mikie Nitta, wife of B. G. Nitta, and mother of the other plaintiffs who were the minor children of the two. At the time of her death Mikie Nitta was of the age of thirty years, B. G. Nitta of the age of thirty-nine years, Setsuko, a daughter, of the age of four years, Masumi, a son, of the age of two years, and Satorn, a son, of the age of five months. Mikie had an expectancy of life of 35 and 33/100 years and her husband of 28 and 91/100 years.

Mikie Nitta died from injuries received in a collision between a light coupe driven by her husband, in which she was riding, and a three-ton truck carrying a load of about four tons of raisins in sweat boxes. The collision occurred at about 2 o'clock in the afternoon of September 17, 1932, in the intersection of Central and Willow Avenues in the county of Fresno. The streets intersect at right angles. Central Avenue runs east and west and is fifty feet in width with a pavement sixteen feet wide. This pavement was not built in the exact center of Central Avenue, the greater width being on the south side of the center line. There is an oiled shoulder two or three feet in width on the south side of the pavement with a smooth graded portion beyond the shoulder suitable for travel by motor vehicles. Willow Avenue is fifty feet in width north of Central Avenue and forty-five feet in width south of Central with a hard oiled surface in its center.

Appellants present four grounds upon which they rely for a reversal of the judgment. (1) That B. G. Nitta was

guilty of contributory negligence as a matter of law; (2) That the defendants were prejudiced by the admission of evidence showing that the death of Mikie resulted in the minor plaintiffs being separated and the surviving family unit being destroyed; (3) That the trial court erred in instructing the jury on the doctrine of imminent danger; (4) That the award of damages in the sum of $20,505 is excessive as a matter of law. We will consider these assignments of error in the order stated.

In considering the question of contributory negligence it should be first observed that the evidence is sharply conflicting. Had the jury returned a verdict in favor of appellants it would have been supported by ample evidence showing that they were not guilty of any negligence and that the negligence of B. G. Nitta was the sole and proximate cause of the accident. However, the jury returned a verdict in favor of respondents, thereby, by implication, finding the appellants guilty of negligence and Nitta free from contributory negligence. This has finally resolved all conflicts in the evidence against appellants. We need consider only the evidence supporting the verdict and judgment to determine whether or not these implied findings of the jury are supported by any competent and material evidence. If they are, the first contention of appellants must be resolved against them.

It is admitted by both parties that the intersection was an obstructed one within the definition of paragraph two of subdivision b of section 113 of the California Vehicle Act. While there is still a permissive speed of fifteen miles an hour in traversing such an intersection, since the adoption of subdivision d of this same section a greater speed is not of itself deemed to be negligence as a matter of law. (*Kellner* v. *Witte,* 133 Cal. App. 231 [23 Pac. (2d) 1045]; *Christy* v. *Baruch Corp.,* 135 Cal. App. 355 [27 Pac. (2d) 660]; *Nieves* v. *Vigolino,* 135 Cal. App. 763 [27 Pac. (2d) 916].)

Nitta testified that with his wife and three children he was traveling east on Central Avenue approaching the intersection at a speed of between eighteen and twenty miles an hour; that when fifty or more feet west from Willow Avenue he saw something which resembled a house moving

southerly on that street; that he reduced his speed to four-teen or fifteen miles an hour and when five feet from the intersection he saw appellants' truck thirty feet from the north line of the intersection proceeding south at a speed of thirty or more miles an hour; that he took his foot off from his brake and gave his automobile a little gas and proceeded to cross the intersection; that he was traveling on the south half of the pavement about two feet south of its center; that about the time his car was passing into the southeast quarter of the intersection the truck struck its left rear fender causing the accident which resulted in the death of his wife. There is no evidence as to the exact speed · at which Nitta was traversing the intersection.

Appellants urge with force and sincerity that the reading of the record leaves the necessary conclusion of negligence on the part of Nitta that contributed to the acci-dent. They say that when he was five feet from the inter-section he knew that he had at least thirty feet plus the length of his car to go to clear the path of the truck and that the truck had about fifty-five feet to go before it reached the path of his automobile; that he knew his own speed was about fifteen miles an hour and that of the truck was thirty or more miles an hour; that a mere statement of these facts drawn from Nitta's testimony demonstrates that he should have realized that a collision was imminent if he continued on his way and the truck did not stop or greatly reduce its speed. Were this the first time a similar question was presented to an appellate court we might be constrained to hold that an ordinary prudent person possessed of the knowledge that Nitta admitted would not have tried to "beat the truck to the crossing" but would have stopped rather than endanger the lives of himself and his family by proceeding on his way. However, there are a legion of cases holding the question of contributory negligence, under the circumstances here presented, one of fact for the jury, and it having absolved Nitta from contributory negligence, the judgment cannot be upset on appeal. We must follow these decisions.

Nitta entered the intersection first, had the right of way and had the right to presume that the appellants would yield the right of way to him. (Sec. 131, Cal. Vehicle Act;

*Olsen* v. *J. J. Jacobs Motor Co.*, 99 Cal. App. 423 [278 Pac. 1051] ; *Jackson* v. *Miller*, 130 Cal. App. 427 [20 Pac. (2d) 113] ; *Leblanc* v. *Coverdale*, 213 Cal. 654 [3 Pac. (2d) 312].) In the case last cited it is said: ''Defendant does, however, contend that the evidence, without conflict or contradiction, shows that the plaintiff was guilty of contributory negligence as a matter of law in attempting to cross the intersection after he had observed the defendant approaching the intersection at such a rate of speed as would bring the two cars into collision if both continued across the intersection at the rate of speed at which each was then traveling. The plaintiff testified that he could stop his machine at the rate of speed he was traveling at the time he entered the intersection within 10 to 12 feet. Atlantic avenue is 80 feet wide. Plaintiff, therefore, had ample time after entering the intersection to have stopped his car before reaching the center of Atlantic avenue. As the defendant was traveling on the westerly side of the avenue, if plaintiff had stopped his machine before reaching the center line of said avenue the accident would have been avoided. Under these circumstances the defendant insists that the plaintiff, in failing to stop and permit the defendant to pass over the intersection, was guilty of negligence as a matter of law. Plaintiff, having entered the intersection first, had the right of way over the defendant's car. Even had the two machines approached the intersection at approximately the same time, the plaintiff's machine, as it was to the right of the defendant's, had the right of way over the latter. (Sec. 131, California Vehicle Act [Stats. 1929, p. 541, sec. 55].) It was, therefore, the duty of the defendant to yield the right of way to the plaintiff. (*Crabbe* v. *Rhoades*, 101 Cal. App. 503 [282 Pac. 10] ; *Wynne* v. *Wright*, 105 Cal. App. 17, 21 [286 Pac. 1057] ; *Couchman* v. *Snelling*, 111 Cal. App. 192 [295 Pac. 845].) Furthermore, the plaintiff as a reasonably prudent person had the right to assume that the defendant would obey the law and yield the right of way at the intersection. In *Wynne* v. *Wright, supra*, at page 21, the court in a case much similar to the present one said: 'While the plaintiff was exercising ordinary care in the operation of his car, he had the right to assume that the defendant would also use ordinary care to avoid an accident

and would obey the law and yield the right of way at the intersection (*Crabbe* v. *Rhoades,* 101 Cal. App. 503 [282 Pac. 10])'." Respondents submitted evidence from which the conclusion may be drawn that appellants' truck approached and traversed the intersection at a speed in excess of fifteen miles an hour from which the jury might conclude that the driver was guilty of negligence; that the truck was not then entirely on its own right-hand side of the road; that by the application of all of its brakes it could have been stopped in a very few feet; and that if the brakes had been applied or if the truck had been swerved slightly to its right after the Nitta car entered the intersection the collision would have been avoided. Under the oft-repeated rules that the questions of the negligence of a defendant and the contributory negligence of a plaintiff are to be determined by the jury, and that the questions of whether or not the negligence of the defendant was the proximate cause of the injury, and whether the negligence of the plaintiff contributed to the accident are generally matters of fact to be determined by the jury, we are bound by the implied findings of the jury that Nitta was free from contributory negligence and that the negligence of appellants was the proximate cause of the accident in which Mikie Nitta received the injuries which resulted in her death.

Appellants rely principally upon the cases of *Donat* v. *Dillon,* 192 Cal. 426 [221 Pac. 193], and *Cady* v. *Sanford,* 57 Cal. App. 218 [207 Pac. 45], as supporting their argument that Nitta was guilty of negligence as a matter of law. In both of these cases the plaintiffs had recovered judgments against the defendants, both of whom had been found guilty of negligence which in each case was the proximate cause of the injury of the plaintiff. An argument similar to that made by appellants here was urged in the case of *Flores* v. *Fitzgerald,* 204 Cal. 374 [268 Pac. 369, 370], with *Donat* v. *Dillon, supra,* cited in support of it. The Supreme Court disposed of the contention as follows: "As to the contention that respondent failed to properly observe the movements of appellant's machine, after first seeing it 150 feet west of the intersection, appellant has cited *Donat* v. *Dillon,* 192 Cal. 426 [221 Pac. 193], where the court, on page 429 of the opinion, said: 'The defendant seeks to take the case out of

the operation of this rule, and would, in effect, have us decide as a matter of law that one having reached the intersection and having given the signal indicating his intention to turn has then relieved himself of all further care in the matter. But it is obvious that such is not the law. A motorist must at all times use due care to avoid colliding with another; he must be ever alert and watchful, so as not to place himself in danger, and while he may assume that others will exercise due care, he cannot for that reason omit any of the care which the law demands of him. Assuming, therefore, that the defendant had the right of way, he was required to proceed across the intersection in a careful and prudent manner, ever watchful of the direction in which danger was most likely to be apprehended. ˙He could not close his eyes so far as southbound traffic on Chester avenue was concerned. To the contrary, having observed Riddle's car approaching at an exceedingly fast rate of speed for that vicinity, the defendant was no longer entitled to rely upon the presumption that the driver of this machine would comply with the rules of the road, and he was bound to take such reasonable measures as he could, under the circumstances, to prevent the injury.' This decision, therefore, instead of being in favor of appellant's contention that the contributory negligence of respondent was a matter of law, plainly, and in unequivocal language, states that it is a matter of fact to be determined by the trial court, and that the finding of the ultimate fact by the trial court was binding upon his court.''

 Appellants urge that Nitta in approaching and traversing the intersection did not ''drive as closely as practicable to the right-hand edge or curb of the highway'' (sec. 122, California Vehicle Act) and in violating the statute was guilty of contributory negligence as a matter of law. The question of whether or not the violation of the provisions of this section was negligence which *actually contributed* to the accident is held to be a question of fact to be decided by the jury. (*Kellner* v. *Witte, supra.*)

 Over the objection of appellants the trial court admitted evidence to the effect that after the death of Mikie Nitta the two older children were cared for at the home of their father by his sister, while the youngest child was being

reared by another sister in another city some miles from the father's home. Appellants urge that this evidence was incompetent for any purpose and that it tended to arouse the sympathy of the jury by showing that the Nitta family unit had been broken up by the death of the mother. The competency of the evidence is questionable to say the least. However, the trial court instructed the jury that in measuring the damage of the minor children only their pecuniary losses should be taken into consideration. This instruction cured the error, if any, in admitting the evidence.

The trial court instructed the jury on the doctrine of imminent danger. Appellants urge that the doctrine is not applicable to the facts of this case and that it did not correctly state the law. Under the first theory they maintain there was no evidence justifying the theory that Nitta was suddenly confronted with an imminent peril, and under the second that the instruction was not a correct statement of the law.

Without repeating the facts of the case bearing on the question of sudden peril it is sufficient to say that we have reached the conclusion that under the conflicting evidence respondents were entitled to have the doctrine of imminent danger given to the jury under the rule announced in the cases of *Kearney* v. *Castellotti*, 55 Cal. App. 541 [203 Pac. 1029], *Reinders* v. *Olsen*, 60 Cal. App. 764 [214 Pac. 268], *Olsen* v. *J. J. Jacobs Motor Co.*, *supra*, and *Mogle* v. *Hunt*, 110 Cal. App. 177 [293 Pac. 844].

The instruction given was in the following language: "One who, without negligence upon his part, is suddenly confronted with imminent danger, or seeming imminent danger, is not required to exercise that degree of care and skill which is required in the commission of an act after careful deliberation; he is required to act only as a reasonably prudent man would act under the same or similar circumstances; and, therefore, if the plaintiff B. G. Nitta was suddenly put in peril without having sufficient time to consider all the circumstances, he is excusable for omitting some precaution or making an unwise choice under this disturbing influence, although if his mind had been clear he ought to have done otherwise. This is especially true if

the peril is caused by the defendant's fault. In such case, even if in bewilderment he runs directly into the very danger which he fears, he is not at fault." Appellants complain of this instruction for the reason (as given by them) that it permitted the jury to excuse contributory negligence on the part of Nitta. They urge that the latter part of the instruction does not repeat the statement that he must be placed in the position of sudden peril without negligence on his part. The instruction must be read and construed as a whole and with all the other instructions given. The questioned instruction opens with the statement that "One who, without negligence on his part, is suddenly confronted with imminent danger". By other instructions the jury was told many times that contributory negligence would defeat recovery by Nitta. It sufficiently appears that imminent danger would not excuse Nitta for an unwise choice unless he was free from negligence. (*Galway* v. *Pacific Auto Stages Inc.*, 96 Cal. App. 169 [273 Pac. 866]; *Marshall* v. *American Meter Co.*, 98 Cal. App. 759 [277 Pac. 894]; *Miner* v. *Dabney-Johnson Oil Corp.*, 219 Cal. 580 [28 Pac. (2d) 23].)

■ Appellants complain of the verdict as being excessive. That it is large must be admitted. It cannot be held excessive unless it appears that it was the result of passion, prejudice or corruption on the part of the jury. The evidence is undisputed that Mrs. Nitta was a faithful and dutiful wife and a careful and attentive mother. She had been educated in the schools of Japan and the United States. She spoke four languages. She assisted her husband in his business—a service station, general merchandise store, ice-cream parlor and lunch-room, and baths—besides performing her duties as a wife and mother. In *Bach* v. *Swanston & Son,* 105 Cal. App. 72 [286 Pac. 1097], where a judgment in the sum of $30,000 in favor of a husband and four minor children was sustained, the court said that "there can be no fixed standard by which that loss can be determined". Under the facts before us we cannot hold the verdict excessive as a matter of law.

The complaint alleged general damages in the sum of $30,000, and special damages in the sum of $505. The verdict was for $20,505, or the exact amount of the special

damages alleged in the complaint plus $20,000. The verdict did not segregate the general and special damages.

The complaint alleges among the special damages, doctor's bill $60, hospital bill $25, nurse's services $10, ambulance hire $10, and damages to the automobile $150. Appellants object to the inclusion of these items in the judgment because they were incurred prior to the death of Mrs. Nitta and are not recoverable in an action for damages resulting from her death. (*Salmon* v. *Rathjens,* 152 Cal. 290 [92 Pac. 733].) It seems clear that in an action by the heirs for damages resulting from death the doctor's and hospital bills, nursing expenses and the cost of an ambulance are not properly recoverable as they were expenses incurred prior to the death in an effort to save life. It is equally clear that damage to the automobile in which deceased was riding is not a pecuniary loss resulting from the death, but a loss occurring prior to and independent of the death.

The complaint alleged these items of special damage and the answer contained a denial of them. There was no motion to strike these items of special damage from the complaint nor any demurrer upon the ground that two causes of action were commingled in one count and not separately stated. These items of special damage were suffered by B. G. Nitta individually and not by the other plaintiffs and he had a separate cause of action against appellants to recover them.

Since the amendment of section 378 of the Code of Civil Procedure (Stats. 1927, p. 631), it has contained the following: "All persons may be joined in one action as plaintiffs who have an interest in the subject of the action or in whom any right to relief in respect to or arising out of the same transaction or series of transactions is alleged to exist, whether jointly, severally or in the alternative, where if such persons brought separate actions any question of law or fact would arise which are common to all the parties to the action". The items of special damage in question certainly involve many of the same questions of both law and fact as are involved in the action of the heirs of Mikie Nitta to recover damages resulting from her death. Under the provisions of this section, B. G. Nitta should have set up in a separate count of the complaint a cause of action

for these damages. This he did not do but mingled his cause of action with the cause of action for damages resulting from the death. In the absence of a special demurrer or motion to strike we cannot now reverse a judgment because two causes of action are commingled in a single count and are not separately stated.

The items of special damage were particularly alleged and totaled the sum of $505. They included damage to the automobile in the sum of $150. The trial court instructed the jury that they might include all of these items of special damage within the amount of their verdict and we must assume that the jury followed the instruction given it. As the jury included in its verdict an odd sum of $505, just the amount of the special damages alleged, it would be splitting hairs to assume that it did not include in its verdict the exact amount of the special damage alleged. It is also clear that items of special damage not alleged cannot be recovered and that the amount of the recovery is limited by the amount alleged. There is a variance between the allegations and proof on some of these items.

As we have observed the complaint alleged damage to Nitta's automobile in the sum of $150, which was included in the sum of $505 alleged as a special damage. Under the rule announced in *Smith* v. *Calley*, 103 Cal. App. 735 [284 Pac. 974], there was no sufficient evidence before the court upon which the damage to the automobile could be fixed. The items of special damage proved and as limited by the allegations of the complaint are as follows: Funeral expenses $250, doctor's and hospital bills $50, nurse hire $10, and ambulance hire $10, or a total of $320, which is $185 less than the amount alleged of $505. The judgment should be reduced by deducting from it the sum of $185.

It is ordered that the judgment of $20,505 be reduced to the sum of $20,320, and as so reduced is affirmed. The parties will pay their respective costs on appeal.

Barnard, P. J., and Jennings, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 26, 1934.